# CHARLESTON.

## STATE v. COOK.

Submitted June 9, 1911.     Decided November 14, 1911.

1.  ADMISSIBILITY OF EVIDENCE—*Reputation of Accused.*

      On a trial for murder, is the bad general reputation of deceased, as a man of unchaste and lecherous habits toward women admissible, upon the issue whether the accused believed the information received from his wife and acted thereon? Discussed but not decided. (p. 720).

2.  WITNESSES—*Examination—Cross-Examination of Accused*.

    Section 20, chapter 152, Code 1906, providing that, "In a criminal prosecution other than for perjury, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination," does not preclude the state, on cross-examination of the prisoner, for the purpose of impeachment, from showing by him that he testified differently on a former trial of the same indictment.  (p. 721).

3.  HOMICIDE—*Evidence—Burden of Proof—Insanity*.

    Where insanity is interposed as a defense to an indictment for murder, the fact of such insanity must, from all the evidence, be proved to the satisfaction of the jury, and the burden is not cast upon the state to prove the prisoner sane beyond a reasonable doubt, immediately that some evidence, however slight, is offered by the accused, tending to rebut the presumption of sanity.  The jury before acquitting the prisoner, should be satisfied, from all the evidence in the case, that the prisoner was in fact insane, at the time of the homicide.  A reasonable preponderance of the evidence in favor of the insanity of the prisoner ought to acquit him.  (p. 722).

4.  CRIMINAL LAW—*Trial—Instructions—Applicability to Case*.

    An instruction propounding the rules respecting circumstantial evidence, as laid down in *State* v. *Flanagan*, 26 W. Va. 122, was rightly rejected by the court below, as being inapplicable to any evidence in the case.  (p. 727).

5.  HOMICIDE—*Instructions—Defenses—Insanity*.

    An instruction propounding the "right and wrong test", where the defense is insanity, and the rules respecting the defense of "irresistible impulse" was not wholly inapplicable to the evidence, and the court below did not err in giving the same to the jury, at the instance of the state.  (p. 727).

6.  CRIMINAL LAW—*Evidence—Expert Witnesses—Hypothetical Questions*.

    In propounding hypothetical questions to expert witnesses, counsel may without error, assume facts fairly inferable from the evidence, in accordance with their theory of them.  (p. 728).

7.  SEPARATION OF JURORS—*Prejudice to Defendant*.

    A case in which the alleged misconduct and separation of the jury was not shown to have been prejudicial to the defendant, justifying a new trial.  (p. 728).

Error to Circuit Court, Wyoming County.

69 W. Va.

Hayes Cook was convicted of voluntary manslaughter, and brings error.

*Affirmed.*

*W. R. Thompson, John M. McGrath,* and *Sanders & Crockett,* for the plaintiff in error.

*William G. Conley,* Attorney General, for the State.

MILLER, JUDGE:

On an indictment for the murder of Alonzo M. Stewart, the defense was temporary or emotional insanity. The verdict of the jury was, guilty of voluntary manslaughter, acquitting the defendant of murder, as charged in the indictment; and the judgment of the court was that defendant be imprisoned in the penitentiary for the period of three years.

In this Court the prisoner relies on numerous assignments of error. Some of the errors assigned in his petition for the writ have apparently been abandoned. We will consider those only which have been argued. We think they are the only points calling for decision.

First, it is claimed the court erred, to the prejudice of the prisoner, (a) in excluding proposed evidence of the general reputation of the deceased, in the county and community in which he lived prior to his death, for lasciviousness, and for making indecent and lascivious proposals to married and unmarried women; and, (b) proposed evidence of numerous witnesses of specific acts of adultery by deceased. On the trial, the theory of the defense was, that the prisoner, on the night of the homicide, on hearing from his wife, her confessions of adultery with deceased, and her account of the manner in which, by his alleged indecent and lascivious proposals, deceased had finally accomplished his purposes with her, became so enraged, and so mentally deranged, that he immediately arose from his bed, saddled his horse, and started for the home of deceased in Pineville, some fourteen miles distant, where on arriving about three o'clock in the morning, he called him out of his house, charged him with breaking up his home, and shot him dead. Much evidence, including that of the prisoner and his wife, was admitted, showing how and when she made her alleged confession

to him, and her story told him of the conduct of the deceased towards her, and its alleged effect upon the prisoner's mental condition, evidenced by his anger, his conduct in leaving his bed, and his preparations to go after deceased; but it is claimed, nevertheless, that if the proposed evidence of the reputation of deceased for lasciviousness, and of the specific acts of adultery had been admitted, as it is earnestly insisted it should have been, the prisoner would undoubtedly have been wholly acquitted of any crime, wherefore he was greatly prejudiced. It is insisted, particularly with reference to the alleged reputation of deceased for lascivious conduct, that it must be assumed that such reputation was known to the prisoner, and that if the evidence had been admitted it would have strengthened his belief in the story told him by his wife, and which intensified his already inflamed passion and resentment against the deceased; and besides would have corroborated the evidence of both before the jury, that deceased was in fact guilty of the conduct with the wife, as she had confessed.

That evidence of such reputation and conduct of the deceased is admissible, in cases of homicide, upon the issue whether the accused believed the information received from his wife, and acted thereon, the prisoner relies mainly on *Jones* v. *State,* 38 Tex. Cr. Rep. 87, 70 Am. St. Rep. 719; *Orange* v. *State,* (Tex.) 83 S. W. Rep. 385, and 1 Wigmore on Ev., section 63, citing and quoting from *Williams* v. *Fambro,* 30 Ga. 233, 235. In *Jones* v. *State,* Jones was convicted of murder in the second degree. In that case the court remarked, that if the jury believed the testimony of Jones and wife, the theory of the defendant that his offense was nothing greater than manslaughter was clearly presented, and if they did not believe this testimony, then manslaughter, so far as the jury was concerned, was not in the case. So we see, that if reputation evidence of this character is admissible, how important it may have been in that case, in aid of the prisoner's defense, in reducing the offence from murder to manslaughter. The Texas court, in that case, was of opinion that the evidence of specific acts of adultery was rightly rejected by the trial court, that such evidence would involve too many issues, and that the court could not turn aside to try a vast number of such collateral matters; but was of opin-

ion that evidence of the deceased's bad reputation, in the particular mentioned, was admissible for the purpose of determining whether the prisoner believed the story told him by his wife, and to add to the probability that he acted on this belief.  According to the Texas cases, the only possible effect of such evidence would have been to reduce the crime from murder to manslaughter, not to wholly acquit the prisoner.  In the case at bar, we must conclude the jury believed the prisoner's story, and that of his wife, for the verdict was manslaughter; so that the result of the trial, so far as the prisoner's guilt or innocence was concerned, was the same as if this character evidence had been admitted.  Moreover, the prisoner proved by his own evidence confessions by the deceased to him long before the homicide, of his lascivious character, of his ravishings of the wives and daughters of brother Odd Fellows and Masons, so that, if the prisoner is to be believed, he needed no proof of the lascivious character of deceased, and of the probability of his guilt, as confessed by the wife on the night of the homicide; wherefore he could not have been prejudiced before the jury on his trial. We need not decide, therefore, and do not decide, whether this class of character evidence is ever admissible in cases of homicide.  The rule of the Texas court did not receive the sanction of the supreme court of Kansas.  *State* v. *Murray,* 83 Kans. 148, 110 Pac. 103.  In that case as in this case, the prisoner had been permitted to testify as to information received from the deceased and others, as to the licentious character of the deceased, and the court observes: "The testimony he was allowed to give accounted fully for the state of his mind, the only matter at issue."

Another point is that the court below, in contravention of section 20, chapter 152, Code 1906, permitted the state, on cross-examination of the prisoner, to interrogate him, for the purpose of impeachment, as to what he had testified on a former trial. *State* v. *May,* 62 W. Va. 129, is relied on.  The statute is: "In a criminal prosecution other than for perjury, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination." Clearly this statute does not apply to a cross examination of the prisoner, when offered as witness in his own behalf on a subsequent trial.  *State*

v. *May* is inapplicable therefore.  The very language of the statute seems to preclude the construction put upon it by prisoner's counsel.  The Attorney General argues that our statute applies only to the "statement", which a prisoner was allowed to make, prior to the statute of 1881, which removed his disability to testify in his own behalf.  He cites *State* v. *Woodrow,* 58 W. Va. 527, 536, and *State* v. *Legg,* 59 W. Va. 315.  He also alludes to the fact that the Legislature of Virginia, because of a contrary construction of the same statute in that state, in *Kirby* v. *Com.,* 77 Va. 681, 689, was, as he argues, forced to amend the statute.  But we need not decide this question.  It is not involved.  All we do decide is that the statute does not preclude the state on cross-examination of the prisoner, when offered as a witness in his own behalf, for the purpose of impeachment, from showing that on a former trial he told a different story.  Moreover, the evidence of the prisoner hardly amounted to proof of what he had testified to on the former trial.  In the first instance, the court refused to permit him to answer; in the second instance, his answer was not responsive to the question, was for the most part voluntary, and rather unimportant.

The third point made relates to the action of the court below in giving and refusing certain instructions proposed on behalf of the state and the prisoner, relating to the defense of insanity, those particularly relating to the burden of proof, where insanity is interposed as a defense.

In our opinion the evidence was wholly inadequate to even rebut the presumption of sanity, justifying any instructions on the subject.  There is no evidence that the frenzy or ungovernable passion, the irresistible impulse of the prisoner, on the night of the homicide, on hearing the confessions of his wife, was the result of mental disease, as distinguished from weakness or passion.  "Mere frenzy, or ungovernable passion, however furious, is not insanity within the meaning of the criminal law."  1 Wharton and Stille's Med. Jur., section 163.  This proposition is stated in practically the same language in Buswell on Insanity, section 442.  This writer adds: "That although one sane in his normal condition lose, for the moment, his reason, through excess of passion, yet he is responsible for acts committed while his reason is thus in abeyance."  The doctrine of Wharton and Buswell is stated in practically the same language in Clark on

Criminal Law, at page 68. Such also is the doctrine of our case of *State* v. *Harrison,* 36 W. Va. 729, where the "right and wrong test" is held to be the true test. In the case at bar there is no substantial evidence of any mental disease of the prisoner, before or after the homicide. Days, and even weeks before he determined to slay Stewart, he had what he eveidently regarded as proof positive of the adulterous conduct of the deceased with his wife, resulting in an agreement of separation; so that the confession of his wife, on the night of the homicide, could not have been a surprise, however much his passions may have been inflamed thereby. There is nothing in the evidence to establish more than the frenzy of passion, and nothing, in our opinion, justifying the theory of insanity.

But assuming, as counsel, and the court below seem to have done, that there was some evidence justifying the instructions, did the court err in the instructions given and refused? At the instance of the prisoner the court did tell the jury: "That the law presumes that every person is sane, and that in a prosecution for murder, it is not necessary for the State to introduce evidence of the sanity of the prisoner, in the first instance. When, however, *any* evidence has been introduced which *satisfies* the jury of the insanity of the prisoner, the burden is then upon the State to establish beyond a reasonable doubt the fact of the guilt of the accused, and if, from all the evidence introduced in this case, you have a reasonable doubt of the sanity of the defendant at the time he committed the act, with which he is charged, then you shall find him not guilty." Objection is made to the words, "which satisfies the jury of the insanity of the prisoner." It is insisted that the burden was not upon the prisoner to satisfy the jury of his sanity, in order to shift the burden of proof to the state, and that he was entitled to have the jury instructed that when "any evidence has been introduced tending to prove insanity," as propounded in instruction number two; or, as proposed by instruction number four, "when any evidence is given which tends to overthrow" the presumption of sanity, the burden is then cast upon the state to prove the sanity of the prisoner, and that if there remains a reasonable doubt of such sanity, the prisoner is entitled to an acquittal; also that he was entitled to have the jury instructed, as proposed in his

instruction number fourteen, "that in every prosecution for murder, the state must establish beyond a reasonable doubt, the affirmative facts that the homicide has been committed, that the prisoner did the deed, that he intended to do it, that he was of sound mind, and not afflicted with insanity when the act was done, and that the act was done with malice aforethought, express or implied"; and also to have the jury told, as further proposed by this instruction, that if a reasonable doubt of his sanity remained he should be found not guilty. These three instructions were rejected.

It is conceded that the proposed instructions are opposed to our cases of *State* v. *Strauder*, 11 W. Va. 745; *State* v. *Harrison*, 36 W. Va. 729, and *State* v. *Robinson*, 20 W. Va. 740; and that the state's instruction number five, objected to, to the effect that the presumption of sanity remains until the contrary be proved, and that the defense of insanity must be proven to the satisfaction of the jury to entitle the prisoner to an acquittal on that ground propounds the law of our cases. It is insisted, however, that our decisions do not propound the law respecting the burden of proof correctly, and are opposed to, and do violence to established principles of criminal law. On the authority of *Davis* v. *United States,* 160 U. S. 469, and we may add decisions of other courts to the same class, it is earnestly insisted, that when *any* evidence tending in any degree, to prove insanity, and to overthrow the presumption of sanity, is introduced, from that time, the burden is cast upon the state to establish the fact of the sanity of the prisoner beyond a reasonable doubt, as it is required to establish every other fact essential to show the guilt of the accused. *Davis* v. *United States* is among that class of cases which has adopted what is called the modern doctrine on this subject. The language of Justice Harlan in that case is: "Strictly speaking, the burden of proof, as those words are understood in criminal law, is never upon the accused to establish his innocence or to disprove the facts necessary to establish the crime for which he is indicted. It is on the prosecution from the beginning to the end of the trial and applies to every element necessary to constitute the crime. Giving to the prosecution, where the defense is insanity, the benefit in the way of proof of the presumption in favor of sanity, the vital question from the time a plea of not guilty is entered until the return of the verdict is

whether, upon all the evidence, by whatever side adduced, guilt is established beyond reasonable doubt. If the whole evidence, including that supplied by the presumption of sanity, does not include beyond reasonable doubt the hypothesis of insanity, of which some proof is adduced, the accused is entitled to an acquittal of the specific offence charged." As interpreted by the prisoner's counsel, this decision holds, that *any* evidence tending to show insanity, however slight, immediately shifts the burden to the state to prove the sanity of the prisoner, as an independent fact, whether or not such evidence be sufficient to overcome, in the minds of the jury, the presumption of sanity. The language of the court may possibly be susceptible of that interpretation. But note the language already quoted: "the vital question from the time a plea of not guilty is entered until the return of the verdict is whether, upon all the evidence, by whatever side adduced, guilt is established beyond reasonable doubt." True this case does hold that if the jury have reasonable doubt of the sanity of the accused he is entitled to an acquittal. Our cases, beginning with *State* v. *Strauder,* are opposed to this "reasonable doubt" rule. Our cases say the insanity must be proved to the satisfaction of the jury, looking not alone to the evidence of the prisoner, but to the whole evidence in the case, including that of the state. In the brief of Assistant Attorney General Dickinson, in *Davis* v. *United States,* reported in 40 Lawyers Edition, United States Supreme Court Reports, page 500, he has collated practically all of the decisions, English and American, as well as the text writers, on both sides of this question. He there classifies our cases, and the Virginia decisions, along with those adhering to the old and well settled doctrine in England, that the burden is on the defendant to establish his insanity to the reasonable satisfaction of the jury; and concludes, that the preponderance of authority is against the contention that it is only necessary to raise a reasonable doubt. Clark on Criminal Law, page 68, referring to this conflict of authority, says: "They are agreed, however, to this extent, namely, that all men are presumed to be sane until the contrary appears, and that a defendant who sets up the plea of insanity must introduce some evidence to rebut the presumption. When we get to this point, the courts begin to differ." Some courts, as this writer says, hold that the burden is on

the defendant to establish his insanity beyond a reasonable doubt; others that the burden is on the defendant to prove insanity by a preponderance of the evidence; still others, that the burden is on the defendant to introduce some evidence to rebut the presumption of sanity, and that if this evidence raises a reasonable doubt, he is entiteld to an acquittal. Underhill on Criminal Evidence, discussing the same subject, and the conflict of the authorities, section 157, says: "But the prevailing ·rule seems to be that an allegation that the defendant is insane is a statement of an independent fact, and is, in its nature, a plea of confession and avoidance. Hence, if insanity is pleaded as a defense, the burden of proof is on the defendant, in conformity with the general rule that he·who asserts any affirmative fact has the burden of proof." In the following section this writer says: "If it be granted that the defendant has the burden of proving his insanity, it remains to be considered what amount or degree of proof is sufficient. The safest rule and one that is sustained by a large majority of the cases, is that a reasonable preponderance of evidence upon this particular point should acquit the defendant." Bishop says: "By all opinions, the defendant must prove the insanity on which he relies,—a proposition not necessarily the same as that the burden of proof shifts to him. The difference, not stated in quite uniform terms in the cases, is, on the whole, this: when the burden is said to shift to the defendant, the meaning is, that he must prove the insanity as an issue distinct from not guilty, and as a separate question; the jury, to acquit, being obliged to find affirmatively that the defendant was insane, though it is admitted the finding need not appear thus formally in the verdict." 2 Bishop Cr. Proc. 672.

Counsel for the prisoner are therefore clearly in error, in their contention that our decisions do violence to established principles of criminal law. True they are not in harmony with the decisions of some courts, but they are in accord with the weight of authority, in this country and in England. If the question were one of first impression in this state, it is unnecessary for us to say on which side of the controversy we might align ourselves; but we are not disposed at this time to depart from the old rule in whose favor many and strong arguments may be made. That rule, as stated in our decisions, and in the instruc-

tions given and objected to by the prisoner, is, that where the defense of insanity is relied upon, the presumption of sanity remains until the jury, from the whole evidence, whether of the state or of the prisoner, is satisfied that the accused, at the time of the homicide, was insane. This, of course, excludes the propositions covered by the prisoner's instructions rejected, and the court committed no error in rejecting them, or in giving the state's instruction number five, or the prisoner's instruction number 2a. Indeed the latter is more favorable to the prisoner than our decisions fairly warrant, for it would seem to warrant a verdict of not guilty if they should have a reasonable doubt of his sanity.

Next, complaint is made of the rejection of prisoner's instruction number sixteen, relating to the degree of proof required, where the evidence is circumstantial. It is not claimed that this instruction was applicable to any evidence of that character, necessary to connect the prisoner with the fact of the killing of the deceased; but it is claimed that it was applicable to the facts and circumstances tending to show insanity. The instruction substantially states the rules, respecting circumstantrial evidence, announced in *State* v. *Flanagan*, 26 W. Va. 122. As an abstract proposition it no doubt states the law correctly; but we do not see its pertinency to any evidence showing or tending to show insanity of the prisoner. The only facts and circumstances to which it could possibly be said to have any application are those relating to the conduct of the prisoner on the night of the homicide. In our opinion there was nothing in these actions, or the circumstances of them, to show insanity. They did show anger and passion, but they were not such as to indicate a diseased mind, such as would excuse the crime. We perceive no error in rejecting the instruction.

Instruction number three, given for the state, the subject of another point of error, relied on, was approved in *State* v. *Harrison, supra.* It simply propounded the "right from wrong test", and told the jury, that mere irresistible impulse would not exempt the accused from criminal responsibility for his act. It is claimed the instruction was irrelevant, because "irresistible impulse" was not relied upon by the defense. We do not agree with counsel on this proposition. We think the instruction was particularly applicable to that part of the prisoner's testimony

in which he swore, that after hearing the confession of his wife on the night of the homicide, that there was something in him or around him that said, "Kill Lon Stewart, avenge your family", and that that was the only thought in his mind. This was at least some evidence of irresistible impulse. We see no error in giving the instruction.

The state over the objection of the prisoner was permitted to propound hypothetical questions to Drs. Sparks and Chafin, assuming as proven all the facts shown in the evidence of the state, and of the prisoner, and upon which the prisoner relied to establish his theory of insanity. The particular criticism of these questions is that they assume as facts, matters which were not proven, for example, that the prisoner, because of certain things that were proven, became suspicious and jealous of Stewart and the prisoner's wife. We see little merit, if any, in the criticism. It is conceded, as was held in *Kerr* v. *Lunsford,* 31 W. Va. 659, that in propounding hypothetical questions to expert witnesses, counsel may assume the facts, in accordance with their theory of them. The theory of the state was, from the facts proven, that the prisoner had in fact become jealous of Stewart and his wife. Other facts proven certainly tend to establish the fact of jealousy, the theory of the state, in the questions propounded the witnesses.

The last, and only other point relied upon is, alleged misconduct and separation of the jury. We have read and considered the evidence relating to this subject. Measured by the rules of *State* v. *Harrison, supra,* and *State* v. *Cottrill,* 52 W. Va. 363, and *State* v. *Cotts,* 49 W. Va. 615, we see nothing in the alleged misconduct or separation of the jury prejudicial to the prisoner, and we must overrule the point.

Upon the whole case we find no substantial error in the trial below, of which the prisoner can reasonably complain. The crime of which he was convicted was slight, considering the nature of the offense. He owes much to the efforts of the able counsel who defended him. If he had been convicted of the graver offense of murder, we do not see upon what principle the verdict could have been disturbed. The judgment below must therefore be affirmed.

*Affirmed.*