STATE OF WEST VIRGINIA *v.* WILLIAM PRICE

(No. 7496)

Submitted February 7, 1933. Decided February 14, 1933.

*George D. Moore* and *Simms & Simms*, for plaintiff in error.
*H. B. Lee*, Attorney General and *R. A. Blessing*, Assistant Attorney General, for the State.

MAXWELL, PRESIDENT:

Under an indictment charging him and Roy James and two others with the murder of Mary Stone in Kanawha County in the month of September, 1931, defendant, William Price, was convicted of murder in the first degree and sentenced to life imprisonment. Mary Stone died as the result of burns received by her when the dwelling of herself and husband, Dryden Stone, was destroyed by fire in the night of September 28, 1931. Roy James confessed to participating in setting fire to the house. He implicated William Price.

At the trial, Price was a witness in his own behalf. In cross-examining him, the prosecuting attorney used a tran-

script of the evidence of the defendant taken before a justice of the peace upon a preliminary hearing of defendant upon the charge involved at the trial. The transcript was thus used in an effort to contradict the defendant in certain testimony which he had just given at the trial. The prosecuting attorney read at length from the defendant's testimony on the preliminary hearing and interrogated defendant as to whether he had so testified. The trial court's action in permitting this course to be taken by the prosecuting attorney is assigned as prejudicial error. It is insisted that this method of cross-examining the defendant was in direct contravention of Code 1931, 57-2-3: "In a criminal prosecution other than for perjury, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination."

This is a time-honored statutory provision. We inherited it from the mother state. Code of Virginia 1860, chapter 199, section 22. The rule is thus applied in *State* v. *Hall,* 31 W. Va. 505, 7 S. E. 422; "No statements made by one accused of crime, while a witness testifying on his own behalf before a justice on his preliminary examination, can be used against him on his trial." It was held that the trial court erred in permitting the prosecuting attorney to prove the statement made by the prisoner when he was before the justice on preliminary examination. The following excerpts and summaries are illuminating. *State* v. *Welch,* 36 W. Va. 690, 15 S. E. 419; "A statement made by a person accused of crime upon the occasion of a preliminary examination before a justice, when he was not sworn or examined as a witness, is not inadmissible by reason of section 20, chapter 152, Code 1891." After the evidence on the examination had closed, the justice asked the accused if he wished to make any statement and he made the statement given in evidence at the trial. *State* v. *Hobbs,* 37 W. Va. 812, 17 S. E. 380: "No statement made by one accused of murder, while a witness testifying at the coroner's inquest, can be used against him on his trial; but anything said by him before such examination as a witness is competent, if relevant." The accused demonstrated to the coroner, before the hearing, the relative positions of accused and deceased in a kitchen at the time

of the homicide. It was held that evidence of this demonstration was properly admitted by the trial court. *State* v. *Legg,* 59 W. Va. 315, 53 S. E. 545: A sworn statement was willingly made by the accused to a justice upon his request. This was not on a hearing or legal examination. Held: that the statute was not applicable. *State* v. *May,* 62 W. Va. 129, 57 S. E. 366. Evidence of statements of the accused held erroneously admitted at the trial on the indictment, though when such statements were made before the justice there was no formal complaint pending against the accused. The justice testified: ''When they had taken the evidence for the state I told them to bring up the witnesses they wanted sworn for the defense, and he was sworn and went on the stand.'' *State* v. *Cook,* 69 W. Va. 717, 72 S. E. 1025, 1027: The statute does not preclude the state, on cross-examination of the prisoner, from showing by him that he testified differently on a former trial of the same indictment. *State* v. *Stroud,* 107 W. Va. 591, 149 S. E. 674: An investigation by a deputy fire marshal is a legal examination within the meaning of the statute. It was improper to admit in evidence a purported confession made by the accused to a deputy fire marshal. *State* v. *Jones,* 108 W. Va. 265, 150 S. E. 728: The evidence of statements of the defendant as a witness before the grand jury was held erroneous.

It is to be observed that none of these cases deals with the exact question here presented, that is, the right of a prosecuting attorney, at the trial of the accused, to cross-examine him with reference to statements made by him on preliminary hearing and to read to such witness, in the presence of the jury, from the transcript of the preliminary examination. The case of *State* v. *Cook, supra,* is to be sharply differentiated from the situation at bar in that the question there presented did not involve the use of testimony given by the accused on preliminary examination, for the purpose of discrediting his testimony at the trial, but involved the use of testimony given by him at a former trial before a court and jury for the purpose of discrediting his testimony on a subsequent trial. The court carefully circumscribed the scope of that decision. Judge Miller, speaking for the court, said: ''All we do decide is that the statute does not preclude the state on cross-

examination of the prisoner, when offered as a witness in his own behalf, for the purpose of impeachment, from showing that on a former trial he told a different story.''

Evidence taken at a trial presided over by a judge, where the constitutional rights of an accused person are safeguarded, stands on very different basis from an examination on preliminary hearing where there may be much informality and where the constitutional rights of the accused do not have the safe-guards as upon a court trial. In this distinction we find the basis of the statute and the fundamental principle supporting the holding in the Cook case. Although, the phrase ''legal examination'' might be deemed broad enough to include a jury trial, this court was of opinion that it was not so intended.

It does not follow that because testimony given by an accused on a former jury trial may be used against him on a subsequent trial for purposes of impeachment, that a transcript of testimony given by him on a preliminary examination may be employed for the purpose of impeaching him on a subsequent trial. The statute is broad and emphatic in declaring that ''evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination.'' Under that inhibition, clearly, a by-stander at a preliminary examination could not testify at a trial of the accused as to statements made by the accused, under oath, at such preliminary hearing. That would involve a direct method of getting before the jury the testimony of the accused on his preliminary hearing. The method employed in the instant case was indirect, though its essential purpose was to get before the jury what the accused had testified on his hearing. To uphold that procedure would involve emasculation of the statute. The courts should not uphold the doing of a thing indirectly which could not be done directly. In our opinion, the prosecuting attorney's use of the transcript of defendant's testimony before the magistrate came within the inhibition of the statute and was therefore improper. This was prejudicial error.

In the early part of his testimony on direct examination, Roy James stated that on Friday night before the burning of the Dryden Stone home the witness and one of his co-

defendants (not Price) and one or two other persons were present in the vicinity of a certain railroad trestle. Witness was then asked what, if anything, was said at that time with reference to Dryden Stone. (The state's theory is that Price and his co-defendants were desirous of destroying Stone's home in order to get rid of him because he had shown some activity in an endeavor to enforce in that community the prohibition law.) Because Price was not shown to be present at the trestle at the time mentioned by the witness, the latter was not permitted to testify what, if any, conversation was then had with reference to Dryden Stone.

Later in the examination of the same witness the prosecuting attorney asked him this question: "Now, on the Friday night before this house was burned you started to tell about some of you being down at the railroad trestle. Will you tell the jury now what if anything was said about Dryden Stone and his house, or about getting him off the creek?" Thereupon, one of counsel for the defendant interposed: "We object. He said Bill Price was not present." Whereupon the court said: "Yes, but the court thinks the subsequent testimony of his acts point to the assumption that if he were not there at that time he became cognizant of it and a party to the transaction, so it may go in." Defendant excepted. The witness (Roy James) in the course of his testimony, after making the above mentioned statement with reference to the presence of himself and others in the vicinity of a certain trestle on Friday night, testified at length with respect to the activities of himself and Bill Price and one or two others on the night of and immediately preceding the fire particularly with reference to their conveying to the vicinity of the Dryden Stone home certain gasoline which is supposed to have been used in starting the fire. This testimony was followed by the said second effort of the prosecuting attorney to have the witness state what was said at the railroad trestle with reference to Dryden Stone. The remark of the court must be interpreted in the light of what had preceded. So that when the court stated that the subsequent testimony with reference to defendant's acts "points to the assumption that if he were not there at that time he became cognizant of it and a party to the transaction" he must be deemed to have been making

reference to Roy James' testimony in respect of the defendant's supposed activities in setting the fire. Perhaps the learned judge did not intend that this meaning should attach to his words, but we are of opinion that they clearly import the meaning we have ascribed to them; that such is their ordinary meaning and must have been so understood by the jury. "Courts should refrain from intimating opinions in reference to matters of fact which might in any degree influence the verdict of the jury." *State* v. *Waters,* 104 W. Va. 433, 140 S. E. 139. Many cases emphasize this cardinal principle. See particularly *Ball* v. *Wilson,* 98 W. Va. 211, 127 S. E. 22. We are of opinion that the trial judge's said remark involved error prejudicial to the rights of the defendant.

The point urged by defendant that he was prejudiced by questions propounded to him and certain of his witnesses, on cross-examination, tending to degrade him and them, is not well taken. The record does not disclose that any such question was propounded to the defendant. Two or three of his witnesses were interrogated as to misdemeanor convictions. Without objection on their part they answered these questions either admitting, denying or offering explanation with reference thereto. There is voluminous discussion of this subject in the cases and texts. Some of the courts take the view that there should be wide latitude in permitting on cross-examination inquiries which tend to discredit a witness, and this is particularly true in respect of prior conviction of crime. 5 Jones on Evidence (2d Ed.), sec. 2372. Other courts take the view that such course may be taken only within very narrow limits. This court adheres to the latter view. The matter is so ably discussed by Judge Brannon in *State* v. *Hill,* 52 W. Va. 296, 43 S. E. 160, that we quote at some length from that opinion:

"The law is that where the question is relevant or material to the matter on trial, the witness must answer, however much it disgraces or discredits the character, because the demands of public justice require this. The witness can set up no privilege in that case; but where the question introduces matter not relevant to the issue on trial, but foreign or collateral to it, if the witness objects to answer, he will not be compelled to do so. This privilege, however,

like the privilege of refusal to answer a criminating question, is personal to the witness. A party cannot insist upon it. If the witness do not object to answer, adverse counsel cannot, so as to make it a subject of error. Though the witness do not object, it seems that it is still within the discretion of the court on its own motion, or at the suggestion of counsel, to allow or refuse the question. It may be a question merely intended to embarrass the witness, worry the witness, exposing indecent things in court, tending to corrupt morals, and answering no fairly useful purpose on the trial. It almost invariably wounds the feelings of the witness and his family. It removes the mantle of oblivion and forgiveness by re-opening the pages of years past and exposing acts done in the infirmity of human nature amid the temptations that beset life. If this door is open wide, the witness-stand will be a terror, men will suppress evidence from fear of it to the injury of public justice, and it will threaten both the worthy and unworthy witness, and be a cross upon which attorneys, too zealous in their cause, will crucify witnesses to suit their own end. It would tend to disorder in courts. Rarely, very rarely, should it be tolerated.''

That case, as appears further from the opinion, is authority for the proposition that a witness may be discredited by showing a conviction of felony or perjury. But, even an effort to discredit a witness on such substantial grounds as that must be within the sound discretion of the trial court. Perhaps no definite rule can be fixed. If the ends of justice seem to require that the old wound be probed, so be it. Otherwise, the mantle of charity should be the shield of him who has erred. It is the policy of the state to encourage people who have made mistakes to live better lives, and not to embarrass them by repeatedly harking back to their misfortunes. A conviction of felony is of course a terrible thing to come into any man's life, but it ought not to be that no man can ever thereafter look the world in the face in an honest effort to make good as a citizen, without having his indiscretion continually flaunted before him. There is wisdom and humanity in the rule stated in *State* v. *White*, 81 W. Va. 516, that a defendant testifying in his own behalf may not be required to answer whether or not he had previously been

convicted of another offense, though we think that rule must be applied within the limitations herein discussed. In the state of Virginia, the rule is explicit: "Whatever may be the rule elsewhere, it is well settled in this state that the character of a witness for veracity cannot be impeached by proof of a, prior conviction of crime, unless the crime be one which involved the character of the witness for veracity. Nor can a witness be impeached by proof of collateral facts irrelevant to the issue, though they gave a bearing on the question of veracity." *Harold* v. *Commonwealth*, (Va.) 136 S. E. 658.

These matters are personal to a witness. He may decline to answer degrading questions unless they relate to relative and material matters. *State* v. *Walker*, 92 W. Va. 499, 508, 115 S. E. 443. And if he does answer, the party propounding the question is bound by the answer. *State* v. *Prater*, 52 W. Va. 132, 151, 43 S. E. 230. Of course he may answer, if, being informed of his rights, he is willing to do so. However, since many witnesses do not know their rights, a trial court, when of opinion that the ends of justice do not demand that the witness be required to answer, should inform a witness that he may decline to answer such questions, and if he then claims his immunity, the court should not permit the crossexaminer to press him on that point. A trial should be fair to witnesses as well as to the accused. It is to be noted that the mere asking of a question imputing turpitude or criminality may be greatly prejudicial to the witness. This, when done for the purpose of discrediting by imputation, should not be permitted by the court.

Where the cross-examination relates to a recent transaction or conviction "bearing directly upon the present character and moral principles of the witness, and therefore essential to the due estimation of his testimony by the jury" (1 Greenleaf on Ev., 15th Ed., sec. 459), the court may permit the inquiry, within reasonable limits. Necessarily, this must rest largely in the sound discretion of the trial judge. *State* v. *Prater, supra.*

Authority need not be cited for the proposition that in no event, upon effort to discredit a witness on cross-examination, is it proper to ask him if he has been indicted for, or otherwise charged with, an offense. Mere accusation should carry no

stigma. One is presumed to be innocent until his guilt is proved. That postulate of the law is not a mere hollow form or deceitful phrase. It is one of the basic guarantees of American citizenship and must be treated as such.

It does not appear from the record before us that the witnesses, when cross-examined about prior convictions, were informed that they were not under compulsion to answer. One witness was questioned about an alleged felony charge against him, but the court struck out that question and the answer of the witness thereto. These matters are here discussed not because they afford ground for reversal in this case but because the rules involved are of very great importance generally in the conduct of jury trials. Reversible error may easily arise because of disregard of these principles.

Other points of error, deemed inconsequential in the light of our holdings above, we shall not discuss.

For reasons set forth, we reverse the judgment of penitentiary confinement imposed upon the defendant, set aside the verdict of conviction, and remand the case for a new trial.

*Reversed and remanded.*