Clyde SNYDER, Appellant,

v.

Ira M. COINER, Warden, West Virginia State Penitentiary, Appellee.

No. 73–2367.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1974.

Decided Feb. 7, 1975.

Jack L. Gould, Bowie, Md., for appellant.

David P. Cleek, Asst. Atty. Gen. of W. Va. (Chauncey H. Browning, Jr., Atty. Gen. of W. Va., Richard E. Hardison, Deputy Atty. Gen. of W. Va., on brief), for appellee.

Before WINTER, CRAVEN and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The petitioner, a state prisoner convicted of rape, seeks federal habeas relief, after exhausting state post-conviction remedies. The District Court denied relief and we affirm.

I

The primary claim of error, asserted by the petitioner, concerns the limitation placed by the trial court on the cross-examination of a prosecution witness. The defense sought to establish by cross-examination of the witness that five years earlier, he, then fifteen years of age, at the insistence of his father, had falsely testified at a deposition that he was a passenger, rather than the driver, of a car that had been involved in an accident. The prosecution objected to the admission of such evidence. The trial court permitted full inquiry to be made by the defense into the incident without the presence of the jury before ruling on the admissibility of such evidence. The witness admitted the incident but stated he acted at the direction of his father. At any rate, after a full inquiry without the presence of the jury during which counsel for the petitioner was allowed to inquire into all the details, the trial court ruled that, under all the circumstances, it would not permit the petitioner to impeach the credibility of the witness by offering proof of such false testimony.

It is the petitioner's contention that the trial court's ruling, limiting the right of cross-examination of the witness, denied him his constitutional right of confrontation. The right to an effective cross-examination, it is well established, is an integral part of the right of confrontation guaranteed under the Sixth Amendment,[1] made applicable to the States by the Fourteenth Amendment.[2] Accordingly, while the scope and extent of cross-examination is generally declared to be within the sound discretion of the trial court,[3] that discretion must be exercised with due regard for the defendant's constitutional rights. Specifically, it is an abuse of discretion and a violation of constitutional rights to deny to a defendant the right to cross-examine a witness at all on "a subject matter relevant to the witness's credibility," such as an instance of prior false swearing. Davis v. Alaska (1974) 415 U.S. 308, 318, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347; United States v. Jordan (4th Cir. 1972) 466 F.2d 99, 104–105, cert.

1. Alford v. United States (1931) 282 U.S. 687, 691, 51 S.Ct. 218, 75 L.Ed. 624.

2. Roberts v. Russell (1968) 392 U.S. 293, 294, 88 S.Ct. 1921, 20 L.Ed.2d 1100.

3. See Beaty v. United States (4th Cir. 1954) 213 F.2d 712, 721, vac. on other grounds, 348 U.S. 905, 75 S.Ct. 311, 99 L.Ed. 710; United States v. Norman (9th Cir. 1968) 402 F.2d 73, 76, cert. den. 397 U.S. 938, 90 S.Ct. 949, 25 L.Ed.2d 119; United States ex rel. Ragazzini v. Brierley (D.C.Pa.1970) 321 F.Supp. 440, 444; States v. Riss & Co. (1953) 139 W.Va. 1, 80 S.E.2d 9, 17.

den. 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262; Simon v. United States (4th Cir. 1941) 123 F.2d 80, 85, cert. den. 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555; Pullman Co. v. Hall (4th Cir. 1932) 55 F.2d 139, 141; Gaiten v. Stahl (D.C.N.C. 1971) 327 F.Supp. 415, 421. This, however, is not an inflexible rule.[4] It does not extend to transactions or convictions which may be considered too remote in time and circumstance.[5] This is so because to permit inquiry into events too remote in time and circumstances is unreasonably to harass, annoy or embarrass the witness, and such harassment is not within constitutional guarantees. Courts, however, have not established any fixed time or settled circumstance by which remoteness may be determined in this context. Since remoteness in this context is an issue to be resolved in the light of the facts of the particular case, it is the rule generally followed in federal courts as well as in West Virginia courts that the issue is a "matter primarily for the trial court's judgment, and its rulings in this respect will not be disturbed except for clear and prejudicial abuse of discretion." Hawkins v. Missouri Pac. R. Co. (8th Cir. 1951) 188 F.2d 348, 351–352; State v. Price, *supra* (167 S.E. at 866).[6] The trial court, in the exercise of its discretion, denied cross-examination in this case because the conduct in question occurred five years earlier at the time when the witness was a juvenile fifteen years of age, acting under the directions of his father.[7] As we have said, ordinarily that ruling would not be "disturbed except for clear and prejudicial abuse of discretion." It is unnecessary, however, for us to determine in this case whether the exercise of discretion by the trial court to the effect that the specific instance about which the defendant was denied the right of cross-examination, on account of remoteness in time and circumstance, constituted "clear and prejudicial abuse of discretion." Assuming *arguendo* that such

4. *See* Davis v. Alaska, *supra* (Stewart, J., concurring):

> " * * * I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions."

5. *See* United States v. Cole (4th Cir. 1974) 491 F.2d 1276, 1279; United States v. Miller (4th Cir. 1973) 478 F.2d 768, 770; State v. Price (1933) 113 W.Va. 326, 167 S.E. 862, 866; 4 Jones on Evidence, sec. 25:12, p. 147 (6 ed. 1972); McCormick on Evidence, sec. 42, pp. 87–8 (1954 ed.); 58 Am.Juris., sec. 746, pp. 402–3; 98 C.J.S. Witnesses § 515, p. 423; Rule 609, New Federal Rules of Evidence.

> The West Virginia rule, as phrased in State v. Price, and controlling in the trial of this case, is limited to a "recent transaction or conviction." This is substantially the rule stated in *Jones* to the effect that the trial judge "should exclude examination as to transactions which are too remote to affect credibility. The court's decision is to be arrived at in view of the evidence which has already been introduced and the testimony of the witness in the direct examination and all the circumstances of the case."

> In its official note on Rule 609, the Advisory Committee observes that, "Few statutes recognize a time limit on impeachment by evidence of conviction. However, practical considerations of fairness and relevancy demand that some boundary be recognized." The Rule accordingly erects an absolute barrier of 10 years on the use of such evidence to impeach the credibility of a witness. Whether a shorter period is justified in a particular case is a matter apparently in the discretion of the trial judge to be determined on the basis of the circumstances of the particular case. A circumstance that the Rule recognizes as entitled to consideration in determining remoteness, it would seem, is the youth of the witness at the time of the transaction sought to be used for impeachment purposes. See subdivision (d) of the Rule and the comment thereon of the Advisory Committee.

6. State v. Price, *supra* (167 S.E. at 866):

> "Where the cross-examination relates to a recent transaction or conviction 'bearing directly upon the present character and moral principles of the witness, and therefore essential to the due estimation of his testimony by the jury' (citing authority), the court may permit the inquiry, within reasonable limits. Necessarily, this must rest largely in the sound discretion of the trial judge."

7. *Cf.,* Lott v. State (1933) 123 Tex.Cr.R. 591, 60 S.W.2d 223, 225, where a conviction obtained nine years earlier when the witness was fifteen years of age was held inadmissible for purposes of impeaching the credibility of the witness.

ruling was a "prejudicial abuse," the error was clearly harmless within the principle of Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

The testimony of the witness in question could only be considered as corroborative *and corroborative of facts that were undisputed even by the defendant himself.* A careful comparison of Franck's and the defendant's testimony clearly demonstrates such corroboration. The witness (Franck) testified that, while he and the prosecutrix sat in a car parked on a sideroad, the car door was suddenly jerked open and he, after being "insulted", was grabbed by the shoulder and dragged out of the car by four men, among whom was the defendant. The defendant admits that he was in the group. He went further and admitted that it was he who actually jerked the door open suddenly, and that he participated in dragging the witness "rudely" from the car.[8] He admitted, too, that both Franck and the prosecutrix plead with him and his companions to "let him [Franck] and his girlfriend go." Franck testified that, after he was pulled "rudely," to use the defendant's own term, from the car, and despite his pleas to the group to let him and "his girlfriend" alone, he was kicked, beaten and knocked down by the group. Again, the defendant admits all this. He testified freely that he was among those struggling with, hitting and kicking Franck. Franck testified someone in the group had a gun and that the gun was fired. The defendant admits there was a gun and that it was fired a number of times.

The defendant sought to give the shooting an innocent purpose by stating that one of the group was engaging in target practice on some beer cans at night! The defendant claimed too the gun was in the possession of another member of the assaulting group and inferred he had no connection with the gun. However, he later testified that when he was getting into the car prior to his alleged assault on the prosecutrix, he had in his possession the gun which he at that point took out of his pocket and gave to another member of the group. Franck, who was being held on the ground some distance in front of his car by one of the group, was not able to see the actual assaults and did not cover them in his testimony. The only testimony given by him that could relate to the assaults consisted of his statement that he heard the prosecutrix struggling and screaming during the time he was being held. The defendant admitted that the prosecutrix struggled, kicked, fought and screamed. He thus confirmed by his own testimony the statement of Franck to this effect. But he contends simply that this did not occur while he was with the prosecutrix. In short, he testified the prosecutrix resisted the others but welcomed him to her embraces and that, while Franck was correct in his statement that the prosecutrix was screaming and struggling, the screams and struggling heard by the witness did not take place while he was with the prosecutrix. Finally, Franck testified to the fact that, after he was released and the group had run off (apparently because of the approach of another car), he hastened back to the pros-

8.  It is somewhat difficult at times to follow the testimony of the defendant, which abounds in inconsistencies and contradictions. He testified on direct that the door on the car apparently opened without explanation. He admitted on cross-examination, however, that he had given a statement to an investigating officer shortly after the incident which statement represented his best recollection at the time, and in this statement he admitted he was the one who jerked the door of the car open. Similarly, he claimed on direct examination that Franck got out of the car—apparently voluntarily. On cross-examination he admitted that Franck was dragged out of the car and that he had been one of those who, in his words, "pushed" Franck out of the car. It was, also, stated without contradiction that the defendant had given another statement to the investigating authorities which differed in other particulars from his testimony at trial. Seemingly because *Miranda* [Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694] had not been observed, the State made no effort to cross-examine on this statement, though cross-examination would have been admissible under Harris v. New York (1971) 401 U.S. 222, 223–226, 91 S.Ct. 643, 28 L.Ed.2d 1.

ecutrix in the car. At that time, he testified, the prosecutrix was in a dazed condition, with her hair caught in the window latch, and with "blood on her chest" and "blood coming out of her nose and mouth." Photographs of the prosecutrix, taken the next morning after the alleged rapes, confirmed cuts and abrasions on the prosecutrix. The existence of cuts and abrasions on the prosecutrix and her bleeding, again, the defendant does not deny, but he contended in his testimony, that it was another member of the group who inflicted these injuries on the prosecutrix.

■ This constitutes a review of the extent of Franck's testimony, so far as it might be considered as affecting the defendant. At most, the testimony of Franck simply confirmed the defendant's own admissions as to his conduct and its nature as well as the conduct of his group. Any restrictions on the right of the defendant to impeach the credibility of the witness imposed by the trial court, if too severe, were thus harmless.

This conclusion is also reinforced by the overwhelming evidence of defendant's guilt,[9] leaving aside Franck's testimony. The defendant admitted that he and his companions had been drinking. He testified he himself had had two drinks of whiskey and some beer. A cousin of the defendant, who was with the group, testified that the defendant and one Ratliff shot pool just before they embarked upon their assault on Franck and his companion for the purpose of determining which one would first assault the girl they confidently assumed was in the parked car they had observed earlier on the back road and to which they intended to go. According to the defendant's cousin, Ratliff won, a somewhat significant fact since, when the group had pulled Franck, the male companion of the prosecutrix, out of the parked car, it was Ratliff who first assaulted the prosecutrix. This testimony, if believed, established the criminal purpose with which the defendant and other members of the group approached the occupants of the parked car. The defendant denied this testimony of his cousin but his conduct, as he himself recounted it, unmistakenly demonstrated the nature of their conduct.

Armed with a gun, the members of the group were not embarking on some youthful lark, prompted by innocent curiosity; they manifestly intended no good when they approached the parked car; their purpose was inferable. And their subsequent conduct fully confirmed the inference. Even under the defendant's account, he and his companions went down to the parked car for the purpose of seeing "what they [that is, the occupants of the car] are doing." They stopped their car some distance from the parked car and noiselessly approached it on foot. It is obvious that they wished to accost the occupants of the parked car before the latter were aware of their presence. As we have said earlier, when the group got to the parked car, the defendant, on direct examination, first said "the car door opened," though he later admitted he may have jerked the door open. He then said that one of his group asked the male companion of the prosecutrix "what he was doing" and, when no answer was given, the same member of the group "put his hand on the boy's shoulder and the boy stepped out of the car." Later, however, the defendant admitted his innocent and guileless account was wide of the mark. He testified Franck didn't just gently step out of the car after a tap on the shoulder but was pulled out of the car. There is no question that the group, which included one [the defendant's half brother] who because of his size and strength was called "Space Man," then assaulted Franck. "Space Man," after Franck had been overpowered, held him, so that he could do nothing and actually could not observe what was taking place in the car. During this time, we have pointed out

9.  *See* Subilosky v. Moore (1st Cir. 1971) 443 F.2d 334, 336, cert. denied 404 U.S. 958, 92 S.Ct. 328, 30 L.Ed.2d 276.

that the group began firing their gun. The contention that the group was engaged in some innocent target shooting is incredible. That this conduct was intended to put Franck and his companion in fear for their lives seems an inescapable conclusion.

While Franck was being overpowered and the gun was being fired, Ratliff, according to the defendant, got into the car with the prosecutrix and asked her to have "a drink of beer" but she did not respond. Later, according to the defendant, Ratliff got out of the car, called to the defendant, asked him if he wanted to have relations with the prosecutrix. The defendant testified that he replied that he did not and then incredibly [if his prior testimony is to be believed] proceeded to get into the car where, according to his account, the prosecutrix, who resisted so vigorously the others, practically seduced him, a story that was undermined by his own later statement that while he was on top of the prosecutrix, he noticed her trying to get at something and that he thought she was trying to get some object with which to hit or assault him. It would hardly seem possible that the defendant could have thought the prosecutrix was willingly consenting if she were attempting at the same time to find an object with which to defend herself against him and his advances. Moreover, during this time one member of the group was engaged in firing their gun. The brandishing of the gun and its use were naturally calculated to instill fear in both the prosecutrix and Franck, and it is difficult to credit that there was any other purpose in such conduct on the part of the group.

That others in the group of which he was an active part had ravished the prosecutrix the defendant did not deny; in fact, he admitted it.[10] The defendant

also admitted that when the group arrived the prosecutrix plaintively appealed to them, *including the defendant,* not to harm or assault her. The appeal fell on deaf ears, including those of the defendant. The guilt of the defendant was thus compellingly established.

We accordingly find no merit in petitioner's first contention.

## II

After testimony had been concluded, the defendant raised the question of the disqualification of one of the jurors in the case. Counsel for the defendant voiced some reluctance in raising the point, especially since the basis for the claimed disqualification was a statement of one Goff, who had been a companion of the defendant on the night of the alleged rapes and who was, also, under indictment for rape on that account. Counsel for the State joined in the suggestion that Goff be examined by the Court. Goff was examined *in camera.* His testimony was to the general effect that he was told by the daughter of one of the jurors, whom he had dated some weeks earlier, that her mother, the juror, had gone over in great detail the facts of the case with her and that her mother had at that time expressed the intention to see that all the participants in the alleged rapes were punished to the fullest extent. All of this occurred, under the time sequence testified to by Goff, long before the jurors had been selected and perhaps before she was included in the jury venire. Goff, also, testified that the daughter was employed in the offices of the State Police and had transcribed the statements or confessions of a number of the participants in the alleged rapes. Examined separately under oath, both the daughter and her mother denied that they had discussed in any

10. *Cf.,* State v. Thompson (1965) 149 W.Va. 649, 142 S.E.2d 711, 719, quoting from State v. Wamsley (1930) 109 W.Va. 570, 156 S.E. 75:

"'* * * At common law persons present aiding and abetting, where rape is a felony, are principals equal in guilt with the

direct perpetrator. * * * All persons who were present aiding and abetting the commission of the fact are principals in the second degree at common law and may be charged in the indictment as having done the act. * * *'"

**230**

detail the case or that the mother had ever expressed any opinion in the cause or indicated she thought that those who had allegedly participated should be punished. Actually, the daughter testified that she had not transcribed the statements of either the defendant or any of the other participants in the alleged rapes. The juror declared her impartiality in the case and the absence of any bias on her part. After considering the evidence and the demeanor of the parties, the trial court concluded that Goff was an untrustworthy witness and found that the daughter and mother had testified truthfully. It accordingly denied the motion to disqualify the juror.

■ Under the circumstances, the determination of the disqualification of the juror was for the trial court. In federal post-conviction proceedings, this ruling could only provide a basis for relief if it could be said to have been so prejudicial as to be violative of due process. *See* Murphy v. State of Florida (D.C.Fla.1973) 363 F.Supp. 1224, 1228–1230, aff. 5 Cir., 495 F.2d 553, 556. We do not find it of such dimensions and it gives no basis for federal habeas relief. In fact, we agree with the state court that the ruling was not clearly erroneous.

### III

■ The other grounds for appeal are without merit. The first concerns delay in the allowance of an appeal. The State Court, however, reordered sentencing in order to permit a belated appeal by the defendant. There is accordingly an absence of any prejudice in this context.

■ The other contention is that the defendant was denied a public trial, since, for a time during arguments of counsel before the jury, a bailiff refused to allow persons to enter or leave the courtroom. Such condition existed for but a short time and was quickly changed by the Court, when advised of the action of the bailiff. The bailiff, in acting as he did, merely sought to pre-

vent any disturbance during the arguments. There were no restrictions placed on the defendant, his counsel, family or witnesses or even spectators then in the courtroom. The incident was entirely too trivial to amount to a constitutional deprivation.

### CONCLUSION

The judgment of the District Court is accordingly affirmed.

Affirmed.