Jack Roland MURPHY, Petitioner,

v.

The STATE OF FLORIDA, Respondent.

No. 73-151-Civ.-CA.

United States District Court,
S. D. Florida.

Aug. 29, 1973.

As Amended Nov. 1, 1973.

Jack R. Nageley, Harvey S. Swickle, Swickle, Katz & Brotman, Miami Beach, Fla., for petitioner.

Robert L. Shevin, Atty. Gen., of Fla., and William L. Rogers, Asst. Atty. Gen., Miami, Fla., for respondent.

## ORDER DENYING PETITION FOR HABEAS CORPUS

ATKINS, District Judge.

Petitioner, Jack Roland Murphy, is before the Court upon filing of his second Petition for Writ of Habeas Corpus.[1] In the instant petition, Murphy contends that his confinement, which stems from a 1970 conviction in Dade County Criminal Court, is unlawful in that (1) the trial court erred by denying his motion for a change of venue in light of allegedly prejudicial pre-trial publicity; (2) the trial court failed to dismiss for cause those jurors who knew that Petitioner was a convicted felon; (3) the trial court committed reversible error in denying Petitioner's motion to bifurcate the trial on the issues of guilt and sanity.

To fully appreciate the issues raised by Petitioner, it is necessary to set forth much of his notorious background.

1. Murphy's first Petition was dismissed by this Court for failure to exhaust state remedies. Order of Dismissal, Murphy v. Wainwright, 72–1392–Civ–CA (December 7, 1972).

Prior to his involvement in the crime which is the subject of this petition, Murphy had focused nationwide attention on himself for his role in the 1964 theft of the "Star of India" sapphire from the New York Museum of Natural History. As a result of that enterprise and because of certain physical characteristics, Murphy was popularly referred to as "Murph the Surf."

On January 28, 1968, Petitioner and three others were apprehended as they fled from the scene of a robbery of a wealthy Miami Beach resident, Olive Wofford. In May, 1968, prior to the trial on charges stemming from this incident, Petitioner was arrested and indicted for the double murder of Terry Rae Kent Frank and Annalie Mohn. The news media referred to these killings as the "Whiskey Creek Murders."

During the pre-trial proceedings in the Wofford robbery case, substantial attention was devoted by the media to a controversial ruling by the trial judge regarding Petitioner's competency to stand trial. Subsequently, the charges in the Wofford robbery case were *nolle prossed* so that the trial in Broward County on the Whiskey Creek Murders could commence. Then on August 14, 1968, Petitioner and three others were indicted by a United States Grand Jury for conspiring to transport stolen securities in interstate commerce. Those charges were closely related to the Whiskey Creek case. On March 1, 1969, Petitioner was found guilty of the murder of Terry Rae Kent Frank. On August 25, 1969, charges in the Wofford robbery case were refiled. In December of the same year, Murphy pled guilty to one count of the federal indictment.

In July of 1970, pre-trial proceedings in the Wofford case began. Petitioner filed a motion for change of venue based on allegedly prejudicial pre-trial publicity. The trial court deferred ruling on this motion until voir dire of the jury panel was completed. On July 27, 1970, the voir dire commenced. It was completed on August 10, 1970. Eventually, Murphy's plea of insanity was rejected and he was convicted and sentenced to serve a term of life imprisonment for the crime of breaking and entering a dwelling with intent to commit robbery being then and there armed and/or assaulting persons therein. He was also sentenced to serve a term of twenty years, consecutive to the first term imposed, for the crime of assault with the intent to commit robbery.

Initially, Murphy contends that the failure to change venue constituted a denial of due process. Petitioner asserts that the publicity surrounding the Wofford robbery and his notoriety attributable to the "Star of India" theft and "Whiskey Creek Murders" negatived any chance for a fair trial that he might otherwise have had in Dade County.

■■ At the outset, it is important to recognize that a trial judge has broad discretion in determining the proper course of action when allegations of prejudicial pre-trial publicity are made. United States v. Collins, 5th Cir. 1972, 472 F.2d 1017. Yet that discretion is not unbridled. The Supreme Court has mandated that the federal courts exercise "the duty to make an independent evaluation of the circumstances" surrounding a claim of prejudicial pre-trial publicity. Sheppard v. Maxwell, 384 U. S. 333, 362, 86 S.Ct. 1507, 1522, 16 L. Ed.2d 600 (1966). Nevertheless, Petitioner must sustain the burden of showing that his conviction was a result of "essential unfairness . . . not as a matter of speculation but as a demonstrable reality." Adams v. United States ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).

■ The Court is sensitive to the delicate balance that must be struck as a result of the pervasiveness of modern communications and the need to insure a fair trial for the accused. The dilemma facing the courts today and the approach that must be taken pursuant thereto were set forth by the United States Court of Appeals for the Second Circuit in United States v. Agueci, 310

F.2d 817, 832 (1962) cert. denied 372 U.S. 959, 83 S.Ct. 1016, 10 L.Ed.2d 12:

> The typical jury, in this age of mass-communications, is not hermetically sealed from the events occurring all about them. Of course, an effort must be made by the trial judge to caution jurors against considering extra-judicial statements pertinent to the guilt or innocence of the individuals upon whom they sit in judgment. Where the cautionary instructions are adequate, as they were here, and where the news reporting was merely routine and hardly inflammatory, the trial judge does not abuse his discretion by refusing to declare a mistrial: "Trial by newspaper may be unfortunate, but it is not new and, unless the court accepts the standard judicial hypothesis that cautioning instructions are effective, criminal trials in the large metropolitan centers may well prove impossible." (citations omitted)

Built into our system are numerous procedures by which the effects of prejudicial pre-trial publicity may be uncovered and eliminated. Chief among these are the granting of a continuance or change of venue and the conducting of an extensive voir dire of prospective jurors.

█ The trial judge properly deferred ruling on the motion for a change of venue in the case *sub judice* until he had an opportunity to see the results of the voir dire of the jury panel, which was conducted by counsel. *See* Hoffa v. Gray, 323 F.2d 178, 180 (6th Cir. 1963), cert. denied 375 U.S. 907, 84 S.Ct. 199, 11 L.Ed.2d 147. The trial court's action was reasonable in light of the fact that the publicity surrounding Petitioner's exploits had, to a great extent, subsided by July of 1970. Moreover, the judge would have no reason to believe that Murphy, who was known statewide, if not nationwide, would not have as good an opportunity to receive a fair trial in Dade County as he would have anywhere else in Florida. In any event, an extensive voir dire would stand as the primary safeguard against the erosion of Petitioner's right to a fair trial because of the existence of allegedly prejudicial pre-trial publicity.

Petitioner contends, however, that the results of the voir dire of the panel necessitated the granting of his motion to change venue. A thorough review of the record of the voir dire reflects the following disposition of the panel. Of the seventy-eight jurors questioned, twelve were excused peremptorily by the Petitioner; twenty-seven were excused for medical, family or economic reasons; three were excused for miscellaneous reasons; twenty were excused because they had formed an opinion that Petitioner was guilty and they could not give the Petitioner a fair trial; eight prospective jurors were peremptorily excused by the State. Eight jurors were selected to serve at the trial—six regular and two alternates.

Of the eight selected, five had read or heard about the facts surrounding the Wofford robbery through the media, from discussions with friends and neighbors, or through discussions with other prospective jurors. Each of the eight selected jurors knew that the Petitioner had previously been convicted in either the Star of India theft or the Whiskey Creek murders.

█ The crucial issue before this Court is whether either knowledge of the facts surrounding the Wofford robbery or knowledge of the Petitioner's prior felony convictions was sufficient to render these jurors impartial in light of their assurances to the court that they would reach a verdict based solely on the evidence introduced at trial.[2]

---

2. Florida law provides as follows:

   § 913.03 Grounds for Challenge to Individual Jurors for Cause

   10) The juror has a state of mind regarding the defendant, the case, the person alleged to have been injured by the offense charged, or the person on whose complaint the prosecution was instituted that will prevent him from acting with impartiality, but the formation of an opinion

The Supreme Court of the United States, realizing the dilemma faced by the courts in ensuring a fair trial for the accused who has been the target of pre-trial publicity, set forth the test for ascertaining the impartiality of a prospective juror. The Court stated:

> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. Irvin v. Dowd, 366 U.S. 717, 722–723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961).

Petitioner is in the position of asking this Court to infer that the jurors in this case were biased because they were aware of his prior felony convictions or were familiar with some of the facts and issues involved in the case. The Court hesitates to draw such an inference in light of each juror's protestations of impartiality. Petitioner carries the burden of proving "whether the nature and strength of the opinion formed are such as in law necessarily . . . raise the presumption of partiality. . . . Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not

necessarily be set aside. . . ." Reynolds v. United States, 98 U.S. 145, 156–157, 25 L.Ed. 244 (1878).

■ The Court is not without some objective criteria by which the jurors' proclamations of impartiality may be measured. If the pre-trial publicity were intensive or extensive or the examination of the entire panel revealed widespread prejudice against the defendant, the Court could, as a matter of law, disregard the jurors' estimation of themselves. Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). After careful consideration of the record, the Court concludes that no such widespread prejudice against the Petitioner was harbored by the jury panel. Furthermore, the publicity of which Petitioner complains was, as the State appellate court found, largely factual, rather than inflammatory in nature. Also, the dates on the great majority of newspaper clippings and edited television news releases show that they had been published between December 15, 1967 and January 24, 1969. Only five articles have been presented to the Court bearing dates of the period of the jury selection and of these, only one received front-page coverage.

■ Petitioner's contention that publicity which focused upon him a year and a half to three years prior to trial must be deemed conclusively prejudicial must fail in light of the Supreme Court's opinion in Beck v. Washington, *supra.* In *Beck,* the defendant, a labor union official, was convicted on a charge of embezzlement of union funds. His trial occurred nine and one-half months after he was first called before a highly-publicized Senate Committee and five months after indictment. The publicity that arose at the time of trial was neither intensive nor extensive. Addressing itself to the contention that the de-

---

or impression regarding the guilt or innocence of the defendant shall not be a sufficient ground for challenge to a juror if

he declares and the court determines that he can render an impartial verdict according to the evidence.

fendant was prejudiced by the pretrial publicity, the Court stated:

> Although most of the persons thus selected for the trial jury had been exposed to some of the publicity related above, each indicated that he was not biased, that he had formed no opinion as to petitioner's guilt which would require evidence to remove, and that he would enter the trial with an open mind disregarding anything he had read on the case. 369 U.S. at 557, 82 S.Ct. at 964.

The passage of time is a crucial factor in determining the effects of pretrial publicity on a jury panel. In fact, the Court finds that each of the five jurors who had some knowledge of the facts of the Wofford robbery possessed only a vague recollection of the facts. The cases relied upon by Petitioner, Pamplin v. Mason, 364 F.2d 1 (5th Cir. 1966); United States ex rel. Bloeth v. Denno, 313 F.2d 364 (2d Cir. 1963) cert. denied 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143. Sheppard v. Maxwell, *supra*; and Irvin v. Dowd, *supra*, are inapposite. Those cases present situations factually distinct from the case *sub judice*.

The issue of whether each juror who possessed knowledge of Murphy's previous felony convictions should have been excluded from service for cause is more troublesome. Those convictions were inadmissible at trial since Murphy did not take the stand.[3] The Court finds, however, that Petitioners' reliance on Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) is misplaced. In *Marshall* the defendant was charged with unlawfully dispensing drugs without a prescription in violation of 21 U.S.C. § 353(b)(1)(B). The defendant did not take the stand but he did raise the issue of entrapment. Seeking to rebut this issue, the Government proffered proof that petitioner had previously practiced medicine without a license. The trial judge refused this offer on the grounds of relevance and prejudice. During the trial, though, two newspaper articles, which reflected petitioner's past felony convictions and admissions to having previously dispensed drugs without a license, were read by seven jurors. Despite the fact that the trial judge subsequently subjected each juror to intensive voir dire to insure that his impartiality was not compromised, the Supreme Court reversed the conviction. In so doing, however, the Court stressed that the action was taken pursuant to its inherent supervisory powers only. *Marshall, supra* at 313, 79 S.Ct. 1171. The Court refrained from analyzing the issue in terms of due process standards.

■ It is axiomatic that a federal district court will not sit as an appellate court to review the wisdom of state court procedures or to review all errors that may be claimed to have been committed in the course of a state criminal trial. The concept of federalism dictates that federal courts overturn a state conviction only when specific constitutional protections have been impugned or when circumstances amounting to a denial of fundamental fairness exist. Colbroth v. Wainwright, 466 F.2d 1193 (5th Cir. 1972); Flanagan v. Beto, 437 F.2d 895 (5th Cir. 1971). The relationship between the federal supervisory power, which underlies the *Marshall* opinion, and the commands of due process was set forth by the Supreme Court in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). The Court stated:

> For, while the power of this Court to undo convictions in state courts is limited to the enforcement of those "fundamental principles of liberty and justice", Hebert v. Louisiana, 272 U.S. 312 [316, 47 S.Ct. 103, 104, 71 L.Ed. 270] (1926), which are secured by the Fourteenth Amendment, the scope of our reviewing power over convictions brought here from the Federal courts is not confined to ascertainment of Constitutional validity. Judicial su-

---

3. Fla.R.Evid. 99.

pervision of the administration of criminal justice in the Federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence. Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as "due process of law" and below which we reach what is really trial by force. Moreover, review by this Court of state action expressing its notion of what will best further its own security in the administration of criminal justice demands appropriate respect for the deliberative judgment of a state in so basic an exercise of its jurisdiction. Considerations of large policy in making the necessary accommodations in our Federal system are wholly irrelevant to the formulation and application of proper standards for the enforcement of the Federal criminal law in the Federal courts. 318 U.S. 340–341, 63 S.Ct. at 613.

 Although the situation in *Marshall* is factually similar to the instant case, the rationale of that opinion militates against Petitioner's position. This Court, then, finds that a trial by jurors, each of whom has obtained knowledge of a defendant's past felony convictions through pre-trial publicity does not, in light of the Supreme Court's refusal to so find, rise to Constitutional proportions when each juror has satisfied the impartiality requirements set forth in Irvin v. Dowd, *supra*. The Court recognizes that the distinction between acts or occurrences which warrant the exercise of federal supervisory powers and those which reflect a denial of due process is often a nebulous one. Nevertheless, the dictates of federalism compel this Court to abide by that distinction whenever it exists. Petitioner's claim regarding the effects of pre-trial publicity must fall.

Similarly, Petitioner's argument that the trial court committed reversible error in denying his motion to bifurcate the trial on the issues of guilt and sanity must fail in light of the nature of this review. A separate trial on the issue of insanity [4] is not required by the Constitution and a state or court may validly consider its purposes better served by resolution of the issues of guilt and sanity in a single trial. United States v. Huff, 409 F.2d 1225 (5th Cir. 1969), cert. denied 396 U.S. 857, 90 S. Ct. 123, 24 L.Ed.2d 108. *See*, McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), and Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L. Ed.2d 606 (1967).

Accordingly, it is ordered and adjudged that the Petition for Habeas Corpus is hereby denied.

---

4. Under Florida procedure, the defendant is not entitled of right to a separate trial on the issue of insanity. Williams v. State, 100 Fla. 814, 130 So. 456 (1930).