**Jack Roland MURPHY, Petitioner-Appellant,**

v.

**STATE OF FLORIDA, Respondent-Appellee.**

**No. 73-3528.**

United States Court of Appeals, Fifth Circuit.

June 10, 1974.

Rehearing and Rehearing En Banc Denied July 12, 1974.

Harvey S. Swickle, Miami Beach, Fla., for petitioner-appellant.

J. Robert Olian, Asst. Atty. Gen., Miami, Fla., Robert L. Shevin, Atty. Gen., Tallahassee, Fla., William L. Rogers, Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The lower court, by a reported opinion, Murphy v. State of Florida, S.D. Fla.1973, 363 F.Supp. 1224, denied appellant's petition for habeas corpus relief from two state sentences received in a single trial, to life imprisonment for armed robbery and consecutively to twenty years imprisonment for assault with intent to commit robbery. We affirm.

The attack upon the state convictions both in the trial court and here is based primarily upon a claim of denial of Fourteenth Amendment due process because of extensive pre-trial newspaper publicity regarding Murphy, known as "Murph the Surf",[1] and resultant prejudice to his Sixth Amendment right to a trial before an impartial jury. Inasmuch as the background facts are fully set forth in the lower court's opinion,[2] a brief outline of them will suffice here.

The issues here as below are (1) whether the Florida state trial court erred in denying appellant a change of venue in the light of the pre-trial publicity; (2) whether that court erred in failing to dismiss for cause those trial jurors who knew Murphy was a convicted felon; and (3) whether that court erred in refusing to bifurcate the trial on the issues of guilt and sanity.

Petitioner was arrested with three other persons in January 1968 as they fled the scene in Dade County, Florida of the robbery of Mrs. Olive Wofford, a wealthy resident of Miami Beach. In May, 1968 before his trial for the Wofford robbery, the petitioner was arrested and indicted for the double murder in an adjoining Florida county, Broward, of two young women, Terry Rae Kent Frank and Annalie Mohn. These killings became notorious in the press as the "Whiskey Creek Murders."

Pre-trial proceedings in the Wofford robbery case involved the trial judge's controversial ruling as to the petitioner's competency to stand trial. Extensive newspaper coverage again occurred. The robbery charges in the Wofford case were nolle prossed to permit the Broward County trial for the Whiskey Creek Murders to proceed. In August 1968, prior to that murder trial, Murphy and three others were indicted by a federal grand jury for conspiring to transport stolen securities in interstate commerce, charges related to the Whiskey Creek case and so played up in the press. Murphy was found guilty on March 1, 1969, of one of the Whiskey Creek murders, that of Terry Rae Kent Frank. Again, the trial and its result were extensively publicized by the news media.

Thereafter on August 25, 1969, the state prosecutor refiled the Wofford robbery case. In December of the same year, Murphy pled guilty to one count of the federal indictment.[3] During the

---

1. Murphy had received nationwide press attention in 1964 for his role in the theft of the "Star of India" sapphire from the New York Museum of Natural History. The public media's use of the nickname "Murph the Surf" dated from that time.

2. Adopted as correct by both parties to this appeal.

3. A statement made by the presiding judge, U. S. District Judge Eaton, in the course of these proceedings did not occur shortly before the Wofford robbery trial in the state court, as stated by appellant's brief. The record shows that Judge Eaton's statement was made at a March 6, 1969 hearing, not at a 1970 hearing, as appellant's brief seems to indicate. At that hearing Judge Eaton

early July 1970 pre-trial proceedings in the Wofford case, Murphy moved for change of venue on the basis of prejudicial pre-trial publicity, including the publicity attendant upon the earlier hearing in the Wofford robbery case, the Star of India theft, the Whiskey Creek Murders, and the federal conspiracy charges. The state trial judge deferred ruling on this motion pending voir dire examination of the jury panel. Voir dire commenced on July 27 and was completed on August 10, 1970. Of 78 veniremen questioned, 12 were excused peremptorily by the petitioner, and 8 by the state, 27 were excused for medical or economic reasons and 3 were excused for miscellaneous reasons. 20 were excused because they stated that they had formed an opinion as to petitioner's guilt and could not give him a fair trial. 8 jurors were selected to serve at the trial, 6 regular and 2 alternate.

Of the 8 selected, 5 had read or heard about the facts surrounding the Wofford robbery through the media, from discussions with friends or through discussions with other prospective jurors. Each of the eight knew that Murphy had previously been convicted either in the Star of India theft or the Whiskey Creek Murders, but each assured the court that he would reach a verdict based solely on evidence introduced at the trial. The court denied the motion for change of venue and the trial proceeded. Murphy's plea of insanity was rejected and he was convicted and sentenced, as noted supra, to life imprisonment and to a term of twenty years consecutive thereto.

The court below carefully weighed the claim of denial of due process on the basis of prejudicial pre-trial publicity, accepting his "duty to make an independent evaluation of the circumstances", Sheppard v. Maxwell, 1966, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, but imposing upon the petitioner the burden of showing that his conviction was a result of "essential unfairness . . . not as a matter of speculation but as a demonstrable reality", Adams v. United States ex rel. McCann, 1942, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268. The district court was "sensitive to the delicate balance that must be struck as a result of the pervasiveness of modern communications and the need to insure a fair trial for the accused", 363 F.Supp. at 1226, adopting the approach set forth in United States v. Agueci, 2 Cir. 1962, 310 F.2d 817, cert. denied, 1963, 372 U. S. 959, 83 S.Ct. 1016, 10 L.Ed.2d 12; Irvin v. Dowd, 1961, 366 U.S. 717, 722–723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, and Reynolds v. United States, 1878, 98 U.S. 145, 156–157, 25 L.Ed. 244. The district judge found the presence of some objective criteria, Beck v. Washington, 1962, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98, in the nature and the time span of the pre-trial publicity. We are in agreement with his determination that since the newspaper articles were largely factual rather than inflammato-

granted a continuance of the case before him, No. 68–360, rather than rule on a motion for change of venue. His ruling was based on expediency:

"I am forgetting the question of prejudice and being very practical about it . . . I think if we tried to do that next week, that we would spend a week on voir dire and never conceivably get a jury. Speaking of the time in Court, I have five other criminal cases I could be trying while we are asking these folks if they know anything about Murph the Surf, because I am telling you, they do. People in this County can tell you who Murphy is, who would not have the slightest idea who Earl Faircloth is, and I think that is a fair statement. I am not talking about any prejudicial newspaper coverage at all. It may be that because Mr. Murphy has simply sort of, somehow or another, become pretty good publicity; but the point is, considering for a moment every count in every trial which was ever had was entirely fair, this man is simply too widely known, and so is Griffith and Kuhn, to some degree." As noted in the text, Murphy pled guilty to one count of this indictment in 1969. Judge Eaton thereafter granted a change of venue to Pensacola in the Northern District of Florida to the remaining defendants under that indictment. Their case was tried and disposed of by him in Pensacola in April 1970.

ry, and since the dates of the news clippings and edited television news releases were almost entirely between December 15, 1967 and January 24, 1969 (only five articles being presented to the court bearing dates of the period of the jury selection and only one of those being a front-page article) the passage of time is a crucial factor in this case. We find no record basis upon which to disturb his finding that "each of the five jurors who had some knowledge of the facts of the Wofford robbery possessed only a vague recollection of the facts." 363 F. Supp. at 1229.

■ We agree with the district court that the failure to grant the motion for change of venue was not a denial of due process.

■ In this connection the petitioner urges that the language used by Judge Eaton (quoted Note 3, supra) in granting a continuance in the federal conspiracy trial shows that a change of venue was mandated in the Wofford robbery trial in state court. This is a new contention, not relied upon before the district court. These remarks were as Judge Eaton stated, not based on the question of prejudice, but entirely on his own estimate of the practicalities of the situation and the conservation of his own judicial time. Made as it was sixteen months prior to the state court trial of the Wofford robbery case, and addressed to entirely different considerations, his statement is irrelevant in the context of this habeas corpus petition. We find petitioner's argument in this respect to be without substance.

■ The second issue, whether each juror who possessed knowledge of Murphy's previous felony convictions, should have been excluded for cause is, as stated by the court below, more troublesome, but we affirm his rejection of this ground of attack by his excellent analysis at pages 1229–1230, 363 F.Supp. As pointed out there, Marshall v. United States, 1959, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250, will not support issuance of the writ on this ground, since as the Supreme Court was at pains to point out, 360 U.S. at 313, 29 S.Ct. at 1171, its action was taken in that direct criminal appeal pursuant only to its inherent supervisory powers and not in terms of due process standards. We think the district court correctly appraised the situation in its refusal on grounds of federalism to grant the writ on this ground of the petition.[4] The district court's holding in this respect is well summarized in the following language:

"Although the situation in *Marshall* is factually similar to the instant case, the rationale of that opinion militates against Petitioner's position. This Court, then, finds that a trial by jurors, each of whom has obtained knowledge of a defendant's past felony convictions through pre-trial publicity does not, in light of the Supreme Court's refusal to so find, rise to Constitutional proportions when each juror has satisfied the impartiality requirements set forth in Irvin v. Dowd, supra. The Court recognizes that the distinction between acts or occurrences which warrant the exercise of federal supervisory powers and those which reflect a denial of due process is often a nebulous one. Nevertheless, the dictates of federalism compel this Court to abide by that distinction whenever it exists. Petitioner's claim regarding the effects of pre-trial publicity must fall." 363 F.Supp. at 1230.

4. We are aware of the view announced in United States ex rel. Doggett, 3 Cir. 1973, 472 F.2d 229, 237–239, that Irvin v. Dowd, supra, and Sheppard v. Maxwell, supra, broaden the *Marshall* holding so as now to require that its rule be applied to state trials. While the question arose in a prejudicial publicity-change of venue setting in *Doggett*, we do not seriously doubt that the Third Circuit would apply its holding equally in a situation involving, as presently under discussion, denials of challenges for cause based on a juror's knowledge of prior convictions. With deference, we disagree with our sister Circuit's conclusion and decline here to be guided by *Doggett*.

Finally, we agree with the holding below that the final ground of attack, the refusal of the state trial court to grant a bifurcated trial on the issues of guilt and sanity, does not rise to constitutional dimensions. Due process does not require a separate trial and the states and their courts are free to determine whether such issues should be tried separately or together. United States v. Huff, 5 Cir. 1969, 409 F.2d 1225, cert. denied, 1969, 396 U.S. 857, 90 S.Ct. 123, 24 L.Ed.2d 108.

The judgment appealed from is in all respects

Affirmed.