UNITED STATES of America, Plaintiff-Appellee,

v.

Thomas J. BARFIELD, Defendant-Appellant.

No. 75–1291.

United States Court of Appeals, Fifth Circuit.

Feb. 25, 1976.

---

Olney G. Wallis, Houston, Tex. (Court appointed), for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG and AINSWORTH, Circuit Judges, and NICHOLS, Associate Judge.*

GOLDBERG, Circuit Judge:

Thomas J. Barfield was charged under a two count indictment with making a false statement on an official form in connection with the acquisition of a firearm and with receiving a firearm affecting commerce, both in violation of the Gun Control Act of 1968, 18 U.S.C. § 922(a)(6) and 18 U.S.C.App. § 1202 (a)(1). After a trial before a jury and a verdict of guilty on both counts, the district court imposed concurrent sentences of five years on Count I and two years on Count II. On appeal, Barfield asserts that the lower court should have granted his request for a mistrial when the prosecutor mentioned in the presence of the jury that Barfield had four prior felony convictions. Although we cannot endorse this type of conduct on the prosecutor's part, we believe that the court, through its cautionary instruction, cured any damage caused by the remark. We therefore affirm the convictions.

## I. The Gun Control Act

Both of the sections of the Gun Control Act involved in this case direct particular attention to the convicted felon. Section 922(a)(6) makes it unlawful "to make any false or fictitious oral or written statement" in connection with the acquisition of a firearm.[1] Federal Trea-

---

* Of the United States Court of Claims, sitting by designation.

1. Section 922(a)(6) reads in its entirety:

    (a) It shall be unlawful—.

    .    .    .    .    .

    (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or

sury Form 4473, which purchasers of firearms must sign, requires the buyer to certify that he has not been convicted of a crime punishable by imprisonment for a term exceeding one year. The form clearly states in two different places that an untruthful answer subjects the applicant to criminal penalties. Section 1202(a)(1) makes criminal the receipt, possession, or transportation in commerce or affecting commerce of a firearm by one who has been convicted of a felony by a court of the United States or any state.

## II. The Stipulation

During the defense's opening statement to the jury, Barfield's lawyer said that Barfield would not contest the fact that he was a convicted felon. After the opening statements, the court asked both attorneys in the presence of the jury if they had entered into any stipulations. The following exchange then took place:

Mr. Wallis (Barfield's lawyer): Your Honor, may it please the court, we should like to enter the stipulation that the defendant is a man convicted

---

collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

**2.** At oral argument, Barfield's lawyer conceded that the Government had opposed the stipulation from the start, even before this exchange in front of the jury.

**3.** The instruction as a whole was as follows:

The Court: Ladies and Gentlemen, please be seated. I want you to listen carefully to me now.

The district attorney made a statement to you in discussing the stipulations they were going to enter into, that could be construed by you that the defendant had previously been convicted four times of felonies.

That's not evidence in the case.

I have told you before what the district attorney or the defense attorney says is not evidence.

The evidence is what the Government brings in to you under sworn, under an oath to tell the truth or by any means that's admissible.

The Government only has to prove one prior felony conviction and that's all that's before you.

---

of a felony for which there is imprisonment in excess of one year.

Mr. Campbell (prosecutor): Your Honor, we would vigorously resist and reject that stipulation.[2]

After more discussion, all in front of the jury, the prosecutor said, "Your Honor, we would be agreeable to expedite matters then if counsel would be willing to stipulate the fact that he has four prior felony convictions." The defense immediately objected and moved for a mistrial. After excusing the jury, the court expressed concern about the prejudicial impact of the prosecutor's statement. Refusing to declare a mistrial, the judge resolved the problem by securing the prosecutor's agreement to the defense's offered stipulation and by instructing the jury on its return that the district attorney's statement was not evidence and should not be considered in any way.[3]

## III. Refusal to Grant Mistrial

The only argument Barfield has mustered on appeal is that the cautionary

---

There is no evidence that the defendant has been convicted of anything else other than one conviction and that's been stipulated to by both sides.

Is that right, gentlemen?

Mr. Campbell: Yes, sir.

Mr. Wallis: Yes, Your Honor.

The Court: You are not to consider that there is a possibility, whatever degree of possibility it is that the defendant has been convicted more than one time. There is no evidence on that at all and anything the district attorney might have said was in error and you are not to consider that at all.

Now, then, I am sure you understand that and you are not to be prejudiced by statements that are made in error. Sometimes statements have been made in error and can influence people. Sometimes you cannot withdraw a statement that's been made in error.

You can only judge this case by the evidence that's admitted as evidence under the ruling of the court.

Now, I admitted one stipulation, that is, that the defendant has previously been convicted of a felony.

instruction was inadequate to cure the prejudice injected by the prosecutor's remark, and for that reason that the court erred in denying the motion for mistrial. As a first line defense, the Government asserts that it did not err in revealing that four prior convictions existed: since it was not required to accept any stipulation, it maintains that all four convictions could have been proved at trial. As a fallback position, the Government relies on the curative effect of the cautionary instruction.

Whether the Government can satisfy its burden of proving the prior conviction of a felony (or a crime punishable by imprisonment for a term exceeding one year) by proof of multiple convictions when the defense has raised an objection seems to be an open question. In *United States v. Rusk*, 5 Cir. 1975, 512 F.2d 815, this Court held that "[t]here was sufficient proof of prior convictions of four burglaries and one assault with intent to rob . . ." in response to the defendant's contention that there was no evidence of his conviction of a crime punishable by imprisonment for more than one year. It does not appear, however, that the defendant objected to proof of more than one conviction. In *United States v. Peplinski*, 8 Cir. 1972, 472 F.2d 84, the jury was apprised of Peplinski's three prior felony convictions, but it probably would have learned of the convictions in the form of impeachment evidence when Peplinski took the stand. Thus, the number of convictions that the Government may prove to satisfy its burden under the Gun Control Act is still unsettled.

No one disputes the necessity of proving one valid conviction. The thorny problem is whether proof of more than one amounts to impermissible prosecutorial overkill. In an attempt to justify proof of several crimes, the Government points out that if the conviction used as proof in the gun prosecution were vacated later, then the gun conviction could also be overturned on a habeas corpus attack under 28 U.S.C. § 2255. *See, e. g., Pasterchik v. United States*, 9 Cir. 1972, 466 F.2d 1367. On the other hand, the danger of the jury convicting a "bad man" is surely enhanced if multiple prior convictions are in evidence. Additionally, when the defendant stipulates to "a prior conviction" the Government may not be exposed to the same problems in the § 2255 situation as it is when a particular conviction is proved.[4]

If the Government's assertion that it is entitled to prove multiple convictions is right, then the prosecutor's remark here would not constitute reversible error, although even the Government concedes it was "indiscreet." We will assume *arguendo*, however, that the Government may prove only one conviction under normal circumstances,[5] and decide whether the court's instruction was adequate to cure the prejudicial effect of the remark.

When the prosecutor mentioned the existence of the four convictions, the court promptly excused the jury, listened to the arguments on both sides, and gave its instruction. The instruction itself was a careful one: several times the

---

4. If a conviction under the Gun Control Act were based on a stipulation that the defendant had been convicted of *a* crime punishable by imprisonment of more than one year, then the later vacation of one of the defendant's former convictions should not necessarily invalidate the gun conviction as well. As long as the Government could prove that at least one valid conviction remained, its gun conviction should be safe. Under this rule, only if all prior convictions were vacated would the gun conviction be fatally defective.

5. Although the Government would be entitled to prove one conviction, it might be possible to limit its proof to one if the defendant were willing to stipulate to the existence of one or more additional felonies. The jury need not know about the stipulation in this kind of case, to avoid undue prejudice, but the record would reflect it to insure that the 2255 situation the Government fears would not arise. If the defendant refused to accept the stipulation, the Government should be entitled to prove a limited number of convictions to protect its own interest.

judge stressed that the jury was not to consider even the possibility that the defendant had been convicted more than one time, and that it was to decide the case solely on the evidence presented under oath. In our opinion, this instruction was adequate to assuage the prejudice injected by the remark. We conclude that the district court did not err in overruling defendant's motion for mistrial. *See United States v. Underhill*, 5 Cir. 1973, 483 F.2d 36, 37; *United States v. Bursten*, 5 Cir. 1971, 453 F.2d 605, 610, *cert. denied*, 1972, 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83.

Additionally, even if some taint of prejudice survived the instruction, the Government's evidence of guilt was so overwhelming that we feel confident that the prosecutor's remark did not influence the verdict.[6] Under the circumstances, even if the denial of a mistrial had been error, it would be "harmless beyond a reasonable doubt." *See Chapman v. California*, 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 829, 17 L.Ed.2d 705, 711.

Curative and cautionary instructions are ofttimes mere placebos and suspect as medication, but we are convinced that the trial judge's words here cauterize whatever wound was caused by the sepsis. We therefore affirm the convictions.

Affirmed.

---

**6.** At the trial, five witnesses for the prosecution testified. Martha Morris, the store employee who handled the Treasury Forms, described her customary practice of filling out the form from information supplied by the purchaser and obtaining the purchaser's signature. John Quinn, a friend of Barfield's who had accompanied him to the store, testified that Barfield had entered the store, returned with the gun, and that "[h]e told me that he couldn't buy the gun, that he was a ex-convict." The next witness, Roscoe Foster, established that the gun had been manufactured in New York and had moved in interstate commerce to Houston, Texas. Federal agent George Taylor testified that Barfield admitted that he had purchased the revolver. Finally, a handwriting expert testified that the signature on the form was Barfield's. Barfield called one witness to impeach Quinn's damaging statements, and re-called Quinn himself. He did not take the stand.