UNITED STATES of America,
Plaintiff-Appellee,

v.

William August Halm WILLIAMS,
Defendant-Appellant.

No. 74–3297.

United States Court of Appeals,
Fifth Circuit.

May 14, 1976.

Tyrus R. Atkinson, Jr., Atlanta, Ga. (Court-appointed), George J. Parnham, Houston, Tex., John A. Pickens, Atlanta, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., William P. Gaffney, Steven W. Ludwick, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

(Opinion Nov. 28, 1975, 5 Cir., 1975,
523 F.2d 1203).

Before TUTTLE, THORNBERRY and MORGAN, Circuit Judges.

PER CURIAM:

The Petition for Rehearing is DENIED and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it. (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also DENIED.

Before BROWN, Chief Judge, WISDOM, GEWIN, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY, GEE, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge, with whom GEWIN, COLEMAN, AINSWORTH and GEE, Circuit Judges, join (dissenting):

It has often been this Court's sad duty to examine a case which from its inception has received the most intense and unrelenting media exposure. See, e. g., *Calley v. Callaway,* 519 F.2d 184 (5th Cir. 1975) (en banc), cert. denied, 419 U.S. 1015, 95 S.Ct. 487, 42 L.Ed.2d 289, 44 U.S.L.W. 3559 (1976); *Murphy v. Florida,* 495 F.2d 553 (5th Cir. 1974), aff'd, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). However, the decision which today we decline to reconsider en banc cannot be seen as merely the latest opinion involving pretrial publicity. The difference between the present case and its many predecessors is the highly unusual route which the panel chose to travel in reversing the judgment below. Despite its many strong suggestions that the trial judge committed error in handling the issue of pretrial publicity, the panel declined to base its decision on that point. The panel was similarly unwilling to say that any other of the host of matters raised by appellant could stand alone as reversible error. Rather, the panel held that one of these alleged errors, i. e., a portion of the prosecutor's closing argument, "operat[ed] together" with the pretrial publicity to produce a "tandem effect" which deprived appellant of his right to a fair trial. I find this analysis entirely misleading and unpersuasive. I also feel that the panel decision will necessarily create a deplorable uncertainty for those district judges in our circuit who are unlucky enough to be called upon to try highly-publicized cases in the future. I therefore respectfully dissent from the denial of appellee's petition for rehearing en banc.

I.

The case presented below to the jury had only one issue that was at all in dispute; that issue was appellant's sanity at the time of the offense. It was conceded that appellant abducted Reginald Murphy at gunpoint and held him captive for two days until a ransom was paid. During this time, appellant posed as a "colonel in the American Revolutionary Army" and lectured Murphy

about his own extreme political opinions, or rather delusions, particularly his belief in a vast international Jewish conspiracy which was causing the fuel shortage as well as a number of the world's other problems. Appellant also announced to Murphy that he would use the ransom money to build the "Army" into a force loyal and powerful enough to make him an important political figure. Soon after Murphy's release, appellant was apprehended and the money was found in his home. Murphy immediately identified appellant as the kidnapper, and this identification was repeated at the trial. In view of the overwhelming and undisputed evidence of his guilt, appellant presented testimony on only one defense, namely that of insanity. This was the only real issue for jury deliberation, and the jury resolved that issue against appellant. In my opinion, no discussion of the questions of law in this case should lose sight of how narrow the factual controversy was. The panel's failure to give due weight to this consideration is basic to its confusing and, to me, erroneous resolution of the appeal.

## II.

On the way to its "tandem effect" holding, the panel discussed several alleged errors and suggested (without deciding) that reversal might be based upon any of them. It will, I hope, clarify matters to treat these issues one at a time and to point out three things which this case is not. First, this is not a case where the trial judge abused his discretion by denying a motion for transfer of venue under Rule 21(a) of the Federal Rules of Criminal Procedure. The record reveals that the publicity given to this case was truly nation-wide in scope. National television networks, widely circulated news magazines, and the major wire services brought the particulars of the kidnapping and its aftermath to the attention of the public in every part of the country. In exhaustive jury selection procedures, which the panel opinion describes as "meticulous in every respect", the trial judge chose a jury which was virtually untouched by the massive media publicity and which had formed no opinion concerning appellant's guilt or sanity. A Rule 21 motion is addressed to the sound discretion of the trial court, see *United States v. Nix*, 465 F.2d 90, 96 (5th Cir.), *cert. denied*, 409 U.S. 1013, 93 S.Ct. 455, 34 L.Ed.2d 307 (1972). On this record, and especially in view of the intense nationwide publicity, it would be sheer speculation for an appellate court to conclude that a trial elsewhere would have taken place before a jury less influenced by pretrial media coverage. There is even less reason to hold that the trial judge abused his discretion in finding the likelihood of prejudice too small to necessitate a change of venue. Compare *United States v. Chapin*, 169 U.S.App.D.C. 303, 515 F.2d 1274, 1287–89 (1975).

This is also not a case where adverse press coverage so pervaded a trial setting as to deny a defendant his due process right to a fair trial. The circus atmosphere of *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), and the blatant bias of the jury panel in *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), are equally absent from the record in this case. The circumstances disclosed by this record are closely akin to those of *Murphy v. Florida, supra*, and *Calley v. Callaway, supra*. As in these two controlling precedents, the trial judge below conducted a searching and sensitive voir dire examination and admitted to the panel only those prospective jurors who were uninfluenced by media coverage and who had no preconceived notions regarding the defendant's guilt.[1] In fact, the testimony of the persons actually empaneled in this case reveals that, if anything, they were less susceptible to bias and less influenced by the media than the jurors in *Murphy* and *Calley*.[2] No constitutional

---

1. The statement, in footnote 10 of the panel opinion, that "continual protestations of impartiality from prospective jurors are best met with a healthy skepticism from the bench", seems rather puzzling, to say the least, in view of the heavy emphasis upon the results of voir dire questioning in *Calley* and *Murphy*.

2. There is nothing in this record which resembles those hints of possible juror bias that led Mr. Justice Brennan to dissent in *Murphy*, see

error, then, can be found in the jury selection process itself, and the panel opinion acknowledges that appellant has made no showing of actual prejudice on the part of the jurors. In light of such "indicia of impartiality", a due process claim could survive only if the local media publicity was so inflammatory as to be "inherently prejudicial." See *Murphy, supra,* 421 U.S. at 802–03, 95 S.Ct. at 2037–2038, 44 L.Ed.2d at 596–597. Certainly no serious contention could be made that this was the case. As in *Murphy* and *Calley,* the media publicity was primarily factual in nature; indeed, it consisted largely of Murphy's indisputably accurate narrative accounts of the kidnapping.[3] Insofar as these news reports and interviews left the realm of the factual and indulged in speculation, they tended to support, rather than contradict, the insanity defense which was appellant's only hope of avoiding a conviction.[4] Under these circumstances, it would be almost frivolous to

claim that the pretrial publicity created prejudice of a constitutional magnitude.[5]

Nor could the prosecutor's improper jury argument merit reversal on its own. This remark by the prosecutor, to the effect that appellant was merely feigning insanity and, if acquitted, would be enabled to commit further crimes, was interrupted in mid-sentence by a motion for a mistrial. The jurors were excused and, upon their return to the courtroom, the prosecutor was vigorously admonished in the presence of the jury, which was told to disregard entirely the line of argument which had just commenced.[6] Unlike the panel, I find this abruptly truncated statement far less likely to have influenced a jury than the extended peroration of the state prosecutor in *Bruce v. Estelle,* 483 F.2d 1031, 1039–40 (5th Cir. 1973). Moreover, any prejudicial effect of these brief remarks was amply cured by the immediate and emphatic intervention of the trial judge. Compare *United States v. Barfield,* 527 F.2d 858, 860–62 (5th Cir. 1976).

---

421 U.S. at 804–08, 95 S.Ct. at 2038–2040, 44 L.Ed.2d at 597–599. Likewise, no juror below expressed a pretrial belief in the credibility of a witness who later testified against the defendant. This, however, was precisely the voir dire testimony of one of the six prospective jurors in *Calley,* see 519 F.2d at 211, n. 47.

3. Compare *Murphy,* 421 U.S. at 802, 95 S.Ct. at 2037, 44 L.Ed.2d at 596; *Beck v. Washington,* 369 U.S. 541, 556, 82 S.Ct. 955, 963, 8 L.Ed.2d 98, 111 (1962); *Calley,* 519 F.2d at 206. Of course, if the trial had revealed an issue as to whether appellant was in fact the kidnapper, it could at least be argued that appellant was necessarily prejudiced by the media accounts which identified him as the perpetrator. However, since there was never any issue on this point, and appellant actually took the stand to admit that he was the "Colonel", this publicity could hardly have had an "inherently prejudicial" effect upon appellant's trial.

4. For example, Murphy described appellant as a "sick man" and "totally disoriented." Appellant's absurd *political views and his delusions* as to his future national importance were also extensively reported in the mass media.

5. As the Supreme Court recognized in *Irvin v. Dowd, supra,* an unusually high number of valid challenges for cause on the grounds of possible bias might indicate a degree of community prejudice which even the most scrupulous voir dire procedures could not overcome. However,

the statistics in this case (22 of 71 prospective jurors successfully challenged for this reason) are almost identical to those in *Murphy,* 421 U.S. at 803, 95 S.Ct. at 2038, 44 L.Ed.2d at 597 (20 of 78 prospective jurors so challenged).

6. The judge addressed the jury as follows:

Now, ladies and gentlemen of the jury, the argument of the United States Attorney or the assistant United States Attorney that was being made immediately prior to your being excused from the courtroom was very improper. You should not consider that argument, that is, the consequences of any verdict you might render. As I told you in the beginning, you are the triers of fact and you must determine guilt or not guilt of the defendant from the evidence you have heard and without regard to the consequences of your verdict. You are only responsible for the truth of your verdict, regardless of what the consequences might be. Completely disregard anything he said in that regard prior to your being excused. Do not draw any inferences from any statements made by the Government. The Court feels that the Attorney for the United States should be admonished in the presence of the jury for his conduct in arguing such to the jury.

Record on Appeal, Vol. XII at 1927–28. Government counsel then apologized to the court in the jury's presence. *Id.,* at 1929.

In discussing these individual points, I have not forgotten that the panel relied, not upon any one alleged error, but rather upon a combination of two of them. However, the panel opinion strongly suggests that reversal could have been based upon each of these three factors, considered separately. I have endeavored to show that the panel's dicta are hopelessly at odds with precedent, in particular the *Calley* and *Murphy* cases. The confusion which these conflicting appellate pronouncements will create in our circuit is obvious, and is moreover precisely the type of problem which the en banc procedure was designed to correct. Transfer of venue, the constitutional implications of pretrial publicity, and prejudicial misconduct by the government are important and often-recurring issues, and the district judges who must wrestle with these difficult problems in the first instance are certainly entitled to clearly enunciated standards.

### III.

Even if the panel's discussion of these individual alleged errors did not justify en banc consideration, the eccentric "tandem effect" holding which today becomes the law in this circuit undoubtedly deserves the attention of the full Court. In my view, it is totally illogical to find that two factors operate in "tandem" when in reality their tendencies are directly contrary. Yet this is exactly what the panel opinion did. Insofar as the pretrial publicity was in any way relevant to the subject matter of the prosecutor's improper argument, it *contradicted* the impression which the prosecutor sought to make. Such publicity as was given to appellant's psyche consisted almost entirely of Murphy's lay speculations, all of which pointed overwhelmingly to the conclusion that appellant (to use Murphy's own words) was "sick" and "disoriented"[7]. Before the jury, the prosecutor argued that appellant, far from being mentally ill, was merely feigning insanity in a desire to return to the community. How these two factors operated together to prejudice appellant is beyond my comprehension. Nowhere in the voluminous record in this case can one locate any pretrial statements by anybody to the effect that appellant was pretending to be insane in order to secure an acquittal. Logic would be satisfied if the publicity and the improper argument *reinforced* each other, but they do not. The panel attempts to avoid this problem by arguing that this publicity "confused" the insanity issue, and that this "confusion" operated in concert with the improper argument. What this argument overlooks is that any pretrial "confusion" which the actual publicity caused could only have operated in appellant's favor. The panel also speaks of the difficulty of "separating out that which aided and that which hindered appellant's insanity defense". However, I am unable to see any publicity which "hindered" this defense, and the panel opinion offers no examples of such publicity. The alleged difficulty, then, does not exist.

I am also exceedingly troubled by the panel's cavalier disregard of the selection procedures which so carefully limited the jury to persons whose exposure to the media publicity was minimal. In view of the jurors' ignorance of this publicity the likelihood of any media-induced prejudice which could "combine" with the prosecutor's argument in any meaningful way would seem to have been extremely small. In my opinion, the likelihood is not sufficiently great to constitute a violation of appellant's right to a fair trial.

### IV.

Finally, the panel opinion reflects no understanding of the dilemma of a district judge who must try a case with this newly-minted precedent before him. He will realize that even the most scrupulous and successful effort to choose a jury untainted by pretrial publicity may be nullified by an

---

7. Appellant can scarcely claim that this was not the tendency of Murphy's remarks. At trial, appellant's counsel led Murphy through these statements one by one in order to point out the support which they gave to appellant's claim of insanity. See Record on Appeal, Vol. VIII, at 762–75.

appellate court's capricious yoking of (a) the pretrial publicity which he has so carefully excluded from the case and (b) some other aspect of the trial which in no way enhances any possible prejudicial effect of such publicity. It should certainly not be beyond the ability of this Court to formulate some sort of rational and predictable test for the guidance of the trial judges in our circuit. To me, the only sensible way to treat an alleged trial error in the light of pretrial publicity is to ask if the one tends to reinforce the other. Only then could the two have a prejudicial "tandem effect" which exceeds the sum of prejudice arising from the factors when considered independently. For a trial judge to identify the prejudicial tendencies of pretrial publicity, and to guide his later rulings so as not to aggravate such tendencies, would at least be a task capable of performance. By contrast, no amount of ingenuity could possibly anticipate all the illogical combinations which future panels of this Court might deem to have "tandem effects" within the meaning of the present case.

Because I feel that the panel opinion has hopelessly confused the important issues in this case, and has adopted a standard equally remote from precedent and common sense, I must respectfully dissent from the Court's refusal to rehear the case en banc.