664 So.2d 302 (1995)
Paul MARSHALL, Appellant,
v.
The STATE of Florida, Appellee.
No. 94-2407.
District Court of Appeal of Florida, Third District.
December 6, 1995.
Bennett H. Brummer, Public Defender, and Marti Rothenberg, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Fleur J. Lobree, Assistant Attorney General, for appellee.
Before NESBITT, JORGENSON and GERSTEN, JJ.
*303 JORGENSON, Judge.
Paul Marshall appeals from an adjudication of guilt and sentence for attempted second degree murder. For the following reasons, we reverse and remand for a new trial.
Defendant was convicted of attempted second degree murder. One week after the jury returned its verdict and was discharged, defendant filed a motion for new trial and a motion for juror interview, alleging juror misconduct. In support of these motions defendant submitted the affidavit of Cindy Munson, a trial witness for the defense and defendant's girlfriend.
In her affidavit and sworn testimony at the hearing on defendant's motions, Ms. Munson alleged as follows. She visited defendant at the Monroe County Jail both before trial and during a two-day recess between juror selection and the remainder of the trial. While on the witness stand she vaguely recognized one of the jurors, Johanna Giorgio. Later after jury deliberations had begun, Munson's memory of juror Giorgio improved, prompting her to inform defense counsel that "I believe she is a volunteer at the Monroe County jail." Finally, after the trial had ended, Munson realized that Giorgio was the worker who had escorted her to the visitation booth during her visits with defendant, including her visit on the eve of trial after Giorgio had been selected as a juror.
There is no dispute that juror Giorgio was, in fact, a volunteer working on the eve of trial at the jail where defendant was incarcerated; the state does not contest that Giorgio, after being sworn in this case, escorted Ms. Munson to the visitation booth to speak with defendant and retrieved Ms. Munson at the end of her visit.
Juror Giorgio's work at the jail had not been revealed on voir dire, in part because neither the court nor counsel asked about the veniremembers' connection to law enforcement. No one responded to the court's initial question whether anyone knew defendant from a business or social relationship. The court then requested that the venire provide a personal history, including employment. Juror Giorgio stated that she was a restaurant manager in Key West and was originally from Maryland, and did not reveal her volunteer jail work. When another potential juror stated that her "whole immediate family [was] in law enforcement so [she did not] know if that would prejudice [her]," juror Giorgio remained mute.
After they were seated, the court admonished the jurors to have no discussions with the defendant, counsel, or witnesses:
From this point everything that you know about this case should come to you from this courtroom in the presence of both of the attorneys, the Defendant and myself.
You should not conduct any investigation of your own about the case. Everything which you need to know in considering your verdict will be presented in this courtroom.
....
Now, in terms of discussions with people you can have no discussions with any of the witnesses, either of the attorneys, or the Defendant about any subject so should you run into one of them in the elevator or around in the halls or byways of the courthouse here and they don't speak to you they seem to ignore you, they aren't being rude. They are just playing by the rules of the game.
The court then recessed until two days later.
In the interim, Munson visited defendant, with juror Giorgio as her escort.[1] The trial reconvened the next day with Giorgio in the jury box and defendant at the defense table. The trial judge reiterated his admonitions to the jury:
During ... recesses you are not to discuss this case with anyone or allow anyone to say anything to you or in your presence about this case.
If anyone attempts to do that, ask them to stop and tell them you are on the jury *304 trying the case. If they insist, leave them at once and report the matter to one of the bailiffs, who will inform me.
The case must be tried by you only upon the evidence that has been presented in this courtroom in your presence, and in the presence of the attorneys, the defendant and myself.
Accordingly, jurors must not conduct any investigation of their own. You must not visit any of the places that are described in the evidence and you must not read or listen to any news reports about this.
Further, you must not discuss this case with any person. And you must not speak with the witnesses, the attorneys or the defendant, about any subject until your deliberations are final.
Munson, who was not present during voir dire and had been excluded from the courtroom with all other witnesses prior to her testimony, took the witness stand later that day. During the trial Giorgio never disclosed her jail contact with Munson or defendant. Afterwards, the jury was sent to deliberate, and the defense began to identify Giorgio's status. The jury then returned a guilty verdict and was discharged. Defendant subsequently filed his motions for a new trial and juror interview, which the court denied.
We reverse and hold that juror Giorgio's failure to disclose her contact with defendant and his witness constituted prejudicial juror misconduct which deprived defendant of his Sixth Amendment right to a fair trial. Juror Giorgio's own misconduct obviates the need to address whether defendant had earlier waived his right to contest her presence on the panel by his lack of diligence in discovering her connection with the prison at voir dire.[2] When the connection deepened and the prejudice was enhanced by the post-voir dire visitations, defendant acquired the further right to juror Giorgio's timely disclosure of this contact.
A juror's breach of her duty of disclosure is misconduct which entitles a defendant to a new trial where prejudice is established. See Fla.R.Crim.P. 3.600(b)(4) (juror misconduct is a basis for a new trial where the substantial rights of the defendant were prejudiced thereby). It is possible that at the time of voir dire juror Giorgio may not have recognized the defendant from the prison. However, it is unfathomable that even with the barest observational faculties sufficient to sit on a jury, Giorgio would fail to later connect the case before her with her jail work. She viewed the defendant in high relief as the principal in the case and then saw and discussed him by name the next day at the prison. Then, after escorting Ms. Munson to visit the defendant, Giorgio saw her testify the following day. These events evoked juror Giorgio's duty to disclose her contacts with defendant or witnesses under the trial judge's admonition to avoid such contacts. Giorgio breached that duty and thereby prejudiced defendant's fair trial rights.
Prison workers in general are not automatically disqualified from jury service. State v. Williams, 465 So.2d 1229 (Fla. 1985). But this case is extreme. Not only was juror Giorgio a worker at a defendant's jail who had contact with him at the jail, but she acquired knowledge of material facts not in evidence  that a defense witness had spent the maximum allowed visitation time conferring with the defendant on the eve of her testimony. Such information could bear on the juror's determination of the credibility of witnesses, which was at issue in this case.
*305 Each of the three individual elements of juror Giorgio's connection to the case, (1) employment at a correctional facility[3] (2) contact with the defendant,[4] and (3) knowledge of material facts not in evidence,[5] may not independently require automatic disqualification. However, prior Florida cases do not address the combination of these elements  the spectre of a juror's substantive contact with the defendant in prison. Compare Williams (noting that state prison employees are not automatically disqualified from jury service but not indicating whether the jurors challenged in that case were employed at defendant's prison); Lusk v. State, 446 So.2d 1038 (Fla.) (where the challenged jurors worked at a different prison), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984); Morgan v. State, 415 So.2d 6 (Fla.) (declining to hold "that all correctional officers were intended to be included within the classes of persons disqualified from jury service by" section 40.07, Florida Statutes (1977), but not indicating whether the challenged jurors worked at defendant's prison), cert. denied, 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982) with Harper v. State, 395 So.2d 150, 154 (Ala. Crim. App. 1981) (noting that "[i]t was indecorous and likely productive of injustice for a juror in a particular case to be at the same time serving as a jailer in such a way as to come in contact with a defendant on trial," but denying a motion for a new trial in part because defendant was aware of the juror's concealed status at voir dire).
We hold that the coincidence in one person of these three prejudicial factors  acquiring material extrinsic evidence through contact with the defendant as a worker at his jail  creates a presumption of prejudice that the state cannot overcome. Cf. Smith v. Phillips, 455 U.S. 209, 223, 102 S.Ct. 940, 949, 71 L.Ed.2d 78, 90 (1982) (O'Conner, J., concurring) ("None of our previous cases preclude the use of the conclusive presumption of implied bias in appropriate circumstances."); Russ v. State, 95 So.2d 594 (Fla. 1957) (if juror had told other jurors that he had personal knowledge of defendant's threats to and beatings of the victim prior to the killing, then prejudice would be presumed and a new trial would be required); Henry v. State, 586 So.2d 1335, 1338 (Fla. 3d DCA 1991) (Cope, J., concurring) ("A challenge for cause should always be granted where the prospective juror is an employee of legal counsel who is handling the case."). By this we presume that "the juror misconduct affected the verdict," Powell v. Allstate Ins., 652 So.2d 354, 357 (Fla. 1995), and a juror interview is not required. Cf. Alfonso v. State, 443 So.2d at 177 ("If ... there are serious questions of possible prejudice, the court must question the members of the jury on the ability to render an impartial verdict."). The presumptive prejudice arising from juror Giorgio's failure to disclose her contact with defendant at his jail and subsequent service on the panel requires a new trial.[6]
Reversed and remanded.
NOTES
[1] Munson testified that while being escorted, she spoke briefly with Giorgio about which visitation booth Paul Marshall was waiting in. Munson is unsure whether Giorgio overheard any of her conversation with defendant, and Giorgio has not been interviewed to resolve this. However, based on the reasoning below, the established circumstances of the visit itself are sufficiently prejudicial to merit reversal, regardless of what Giorgio may have heard at the prison.
[2] A case will be reversed because of a juror's nondisclosure of information at voir dire only when the following three-part test is met: (1) the information must be relevant and material to jury service in the case; (2) the information must be concealed by the juror during voir dire examination; and (3) the failure to discover the concealed information must not be due to the want of diligence of the complaining party. De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla. 1995); Industrial Fire & Casualty Ins. v. Wilson, 537 So.2d 1100, 1103 (Fla. 3d DCA 1989). Juror Giorgio's failure to mention her jail work was not a false response. While we would hope for more candor from veniremembers, defendant did not ask questions calculated to elicit Giorgio's jail work on voir dire. Whether the concealment and diligence prongs of the misconduct test have been met are close factual issues which would require a juror interview for resolution. However, as set forth below, Giorgio's subsequent misconduct mandates a new trial without the need to address these issues.
[3] E.g. Williams; see also Ortiz v. State, 543 So.2d 377, 379 (Fla. 3d DCA 1989) ("Employment by a law enforcement agency does not automatically disqualify a juror from serving.").
[4] E.g. Alfonso v. State, 443 So.2d 176 (Fla. 3d DCA 1983) (approving the denial of a motion for new trial where a juror who had spoken with police officer witness was not barred from service after the trial court determined that the juror's impartiality was not compromised).
[5] E.g. Bottoson v. State, 443 So.2d 962 (Fla. 1983), cert. denied, 469 U.S. 873, 105 S.Ct. 223, 83 L.Ed.2d 153 (1984) (finding no prejudice to the defendant where an exhibit that had not been offered into evidence was sent to the jury room with the evidence during the deliberations in the penalty phase); White v. State, 462 So.2d 52 (Fla. 1st DCA 1984) (no prejudice to the defendant where a juror had undertaken an independent view of the crime scene), rev. denied, 472 So.2d 1182 (Fla. 1985); Murphy v. State of Florida, 363 F. Supp. 1224 (S.D.Fla. 1973) (jurors with knowledge of inadmissible evidence of defendant's prior convictions were not constitutionally barred from service where they attested to impartiality on voir dire), aff'd 495 F.2d 553 (5th Cir.1974), aff'd, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).
[6] The state argues that after his counsel learned of Giorgio's jail-worker status from Ms. Munson, defendant again waived his rights by failing to object to juror Giorgio before the jury was discharged. The state focuses on the loss of opportunity for a fresh polling of the jury to determine whether the prejudicial event tainted the impartiality of the verdict. However, prejudice and impartiality of juror Giorgio are presumed and there was nothing to be gained by polling the jury after the verdict.